796 P.2d 527

**Eldon B. BINGHAM and Betty Ann Bingham, individually and as the heirs of Joseph Lynn Bingham and unborn infants John Doe and Jane Doe; and Donna Ann Bingham, Plaintiffs–Appellants–Cross Respondents,**

v.

**FRANKLIN COUNTY, a political subdivision, Defendant–Respondent–Cross Appellant.**

No. 17867.

Supreme Court of Idaho.

Aug. 17, 1990.

---

Steven R. Fuller, Preston, for plaintiffs-appellants-cross-respondents.

Penland & Munther, Boise, for defendant-respondent-cross appellant. Richard C. Boardman argued.

BISTLINE, Justice.

This appeal reviews the district court's rulings on two summary judgment motions. The facts of the case may be quickly stated. On June 22, 1983, Donna Bingham was driving a truck loaded with hay on Hot Springs Road in Franklin County. On hitting a number of potholes the passenger door of the truck flew open. Joseph Bingham, Donna's younger brother, who was riding in the passenger seat of the truck, fell out of the truck and the truck overturned. Immediately after the accident, Donna was able (despite her own injuries) to pick up Joseph's severely injured body and run toward the family's nearby residence. She was met by her mother, Betty. Betty and her husband Eldon immediately drove Joseph and Donna to the hospital, but Joseph could not be resuscitated. In August, Betty suffered a miscarriage of the twins she had been carrying for approximately five months.

The Binghams' ensuing action charged that Franklin County was liable for the property damage, deaths, injuries, and emotional distress allegedly caused by the County's negligent failure to properly design, construct, maintain, and repair Hot Springs Road. The complaint sought damages for the wrongful death of Joseph, the destruction of the truck, the wrongful death of the twins, Betty's emotional distress, and Donna's physical injuries and emotional distress.

■ The County's first motion for summary judgment was based on the open and obvious danger theory. The court denied this motion, stating that "[i]t is defendant's position that no duty was owed to plaintiffs because the driver of the truck, Donna Ann Bingham, was aware of the presence of potholes or other disrepair in the road. A plaintiff's knowledge however, does not necessarily vitiate a duty to the plaintiff." We affirm the district court. In *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989), this Court "retire[d] the open and obvious danger doctrine." 115 Idaho at 595, 768 P.2d at 1328.

Franklin County's second motion for summary judgment was based on I.C. § 6–904(1) of the Idaho Tort Claims Act. Franklin County also asserted that there was no basis (with the exception of a portion of Donna's claim) for the Binghams' claims of emotional distress and wrongful death. In a minute order containing no enlightening rationale,[1] summary judgment was entered on the County's second motion for summary judgment. Immunity under

the Tort Claims Act would preclude all of the Binghams' claims against the County. Therefore, the main issue to be discussed is whether the County is immune from liability under the Act. For the reasons given below, we reverse this grant of summary judgment.

Preliminarily, we note the applicable standard of review where appellate courts consider the validity of orders granting or denying summary judgment motions: "[I]f the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then the district court's order of summary judgment will be affirmed. Idaho Rule of Civil Procedure 56(c). The pleadings and the evidentiary record will be liberally construed in favor of the party opposing the summary judgment. *Anderson v. City of Pocatello*, 112 Idaho 176, 179–80, 731 P.2d 171, 174–75 (1986).

Both in the district court proceedings and on this appeal, Franklin County has insisted that the determination whether, how and when to repair Hot Springs Road is a discretionary function. In particular, the County asserts that the procedures for maintaining the County roads are based upon policy decisions.[2] According to the County's argument, this Court in abiding by the first subsection of the Tort Claims Act immunity provisions must not review such procedures. Franklin County's Brief at 28. However, the County mischaracterizes I.C. § 6–904(1).[3] And, by implication,

---

1. Judge Transtrum's minute entry and order simply states:

   This matter is before the court upon defendant's second Motion for Summary Judgment. The court has heard oral argument, reviewed the file and its contents, including affidavits filed in support of the motion, referenced deposition contents, and supporting and opposing briefs. The court must conclude that there are no genuine issues of material fact left to be determined by this court or a jury, and with good cause appearing therefore:

   IT IS HEREBY ORDERED that defendant's motion for Summary Judgment is hereby granted. Counsel for defendant shall prepare an appropriate judgment of dismissal and submit the same to the court for signature.

The judgment of dismissal also did not explain the reasons behind the court's grant of summary judgment dismissal.

2. "In summary, it is evident that Franklin County's maintenance and repair of its roads is a matter of choice based upon numerous ... policy decisions." Franklin County's Brief at 38.

3. I.C. § 6–904(1) provides that:

   A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which ... [a]rises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance

when we have not been furnished with the district court's reasoning behind its order, it is only logical to indulge in the surmise that the County's mischaracterization of the Tort Claims Act led that court astray.

■ While the County quotes in its brief from the discretionary function or planning prong[4] of I.C. § 6–904(1), the County nevertheless alleges all the elements necessary to fall under the operational or plan implementation prong[5] of that statutory provision. In essence, the County argues that, while there was a plan or policy in place concerning the maintenance and repair of County roads, the County's decision whether, how and when to repair Hot Springs Road was an immune "discretionary function" decision. The County's stance confuses the two prongs of I.C. § 6–904(1) because the County assumes that all choices are "discretionary" in the sense used by the discretionary function prong of the statute.

As we explained in *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986):

The first clause in § 6–904(1) casts some light on the meaning of 'discretionary' when it provides for immunity from claims arising out of governmental employees' actions 'in reliance upon or the execution or performance of a statutory or regulatory function,' but only where the governmental employees exercised 'ordinary care.' To execute or perform a statutory or regulatory function is to implement (or make operational) the policy involved in statutory and regulatory functions. The fact that this clause is joined to the 'discretionary function' clause with the disjunctive 'or' demonstrates that the two clauses describe mutually exclusive conduct. *Dalehite [v.*

*U.S.], supra,* 346 U.S. [15] at 34, 73 S.Ct. [956] at 967 [97 L.Ed. 1427]; [(1953)] *Downs [v. U.S.], supra,* 522 F.2d [990] at 996. [(6th Cir.1975)] Thus, the term 'discretionary function' could not include the execution or performance of, *i.e.,* the implementation of, statutory or regulatory policy. Since discretionary functions involve actions qualitatively different from implementing policy, and since the former by definition involve the exercise of choice, judgment, and the ability to make responsible decisions, then discretionary functions must actually involve the formulation of policy.

*Sterling,* 111 Idaho at 227, 723 P.2d at 771.

To grasp the difference between operational immunity and discretionary function immunity, consider this example taken from *Downs v. United States,* 522 F.2d 990, 997 (6th Cir.1975), which was discussed by this Court in *Sterling:*

For example, when the FBI established its policy for dealing with hijackings in its handbook, it was conducting a planning activity involving policy formulation, for which the government was immune under the discretionary function clause even if its policy was negligently set; however, when FBI agents applied that policy to an actual hijacking, those agents were carrying out operational activities, for which the government is immune under the first clause of the exception so long as the agents used due (or ordinary) care. [Citations omitted.]

*Sterling,* 111 Idaho at 230, 723 P.2d at 774.

We do not know whether the district judge granted summary judgment of dismissal to the County on the basis of discretionary function immunity, or whether he

upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

**4.** The planning prong of I.C. § 6–904(1) provides immunity for "any act or omission ... based upon the exercise or performance or the failure to exercise or perform a discretionary

function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused."

**5.** The operational prong of I.C. § 6–904(1) provides immunity for "any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid...."

granted dismissal on the basis of operational immunity. But when we attempt to extract from the record the elements of either type of immunity to support the dismissal, we are confronted with material issues of fact that remain unresolved, precluding summary judgment.

■ As a threshold matter, we note that the County is charged by statute with the duty of maintaining the roads. *See* I.C. § 31–805 [6] and I.C. § 40–604.[7] The fact that such a statutory duty exists is important in light of I.C. § 6–903(a). As we explained in *Walker v. Shoshone County,* 112 Idaho 991, 739 P.2d 290 (1987):

> On a summary judgment motion, a trial judge should first determine whether the plaintiff's allegation generally states a cause of action for which 'a private person or entity would be liable for money damages under the laws of the state of Idaho....'' I.C. § 6–903(a); *see Sterling, supra,* 111 Idaho at 216, 218, 723 P.2d at 760, 767; *Jones [v. St. Maries], supra,* 111 Idaho [733] at 758, 727 P.2d [1161] at 1186, n. 1 [ (1986) ] (Huntley, J., concurring). In other words, is there such a tort under the laws of Idaho? If

so, the court must determine whether, as a matter of law, an exception to liability found in the Tort Claims Act or elsewhere shields the alleged misconduct from liability. If no exception applies, the trial court must reach the merits of the claim.

*Walker,* 112 Idaho at 995, 739 P.2d at 294. The powers and duties over the county roads granted to the County by the legislature satisfy the threshold requirement of I.C. § 6–903(a).

Given the statutory background just described, the County may nevertheless be able to show that it is immune from suit under the operational or plan implementation prong of I.C. § 6–904(1). If "in reliance upon or [in] the execution or performance of" the powers and duties entrusted to it by the state legislature, the County promulgated a policy or plan of road repair and implemented or carried out that plan exercising ordinary care, then the operational prong of I.C. § 6–904(1) would provide immunity to the County.

The County has asserted that it did indeed have a policy on road repair, although there is conflicting evidence.[8] But even if

---

**6.** Title 31, "Counties and County Law," includes Chapter 8, "Powers and Duties of Board of Commissioners." Section 805 gives the County Board the "jurisdiction and power" (*see* I.C. § 31–801) "[t]o lay out, maintain, control and manage public roads...."

**7.** Title 40, "Highways and Bridges," includes Chapter 6, "County Commissioners and Highway Officers." Section 604 lists the duties and powers of the commissioners, which include developing "general policies regarding highway matters" (*see* I.C. § 40–604(1)) and removing highways "from the county highway system when that action is determined to be in the public interest" (*see* I.C. § 40–604(4)).

**8.** In his deposition LaVon Bowman, the County's road supervisor, stated that the road workers would "work [their] way around" the County's road system. Later, however, in his affidavit in support of the County's motion for summary judgment, Bowman asserted a number of obvious considerations that may have entered into the priorities given to road repairs. At one point during his deposition, Bowman was asked which roads get repaired first:

Q. Well, was it possible to work them all at once?
A. No, not at once, but we just go out and start grading one end and make a circle

through, work through, work our way around.
Q. I see, so you would start at one end of the county?
A. Yes.
Q. And make a circle?
A. Yes.

Bowman Deposition, 11–12. Bowman explained in his affidavit that roads with higher speed limits, with a greater volume of traffic, and roads close to population centers would have repair priority over other roads. These considerations, in addition to the availability of road repair funds, were what dictated the repair schedule of the County according to the affidavit. On the other hand, a review of the documents presented to the district court by the County reveals that the County's main policy contention was lack of money. To support this contention numerous documents concerning the County's budget were submitted to the lower court. While we recognize the important role that the lack of money can play in determining government policy (*see,* for example, the decision upheld in *Lewis v. Estate of Smith,* 111 Idaho 755, 727 P.2d 1183 (1986), re: fire inspections), the Tort Claims Act does not accord a governmental entity immunity on the basis of shortage of funds. Furthermore, the County has a statutory duty to maintain the roads (*see*

a policy does exist, the material issue of fact that clearly remains unresolved and makes summary judgment improper under the I.C. § 6–904(1) operational prong is whether the County exercised ordinary care in executing that policy. The operational prong requires the exercise of ordinary or due care by the governmental entity. The record before us is silent on this issue of fact, and it would be improper, without the guidance of a memorandum decision from the district court and a fully developed record, for us to presume that a plan exists, and that the plan was implemented with respect to Hot Springs Road with ordinary care.

■ The County may wish instead to pursue immunity under the "discretionary function" prong of I.C. § 6–904(1), instead of the operational prong of that statute. Unlike the operational prong, "[t]he discretionary function exemption does not apply to negligent operational decision-making, nor does it shield the negligent implementation of a statute or policy...." *Czaplicki v. Gooding Joint School Dist.*, 116 Idaho 326, 330, 775 P.2d 640, 644 (1989). To establish discretionary function immunity, the County must show the repair of Hot Springs Road was a discretionary decision in the sense used by I.C. § 6–904(1). The steps for determining the applicability of discretionary function immunity have been described before:

> First, one must examine the nature and quality of the challenged actions. [Citation omitted.] Routine, everyday matters not requiring evaluation of broad policy factors will more likely than not be 'operational.' Decisions and actions which involve a consideration of the financial, political, economic and social effects of a given plan or policy will generally be 'planning' and fall within the discretionary function exception. [Citation omitted.]
>
> Second, the policies underlying the discretionary function exception must be considered. The policies are twofold: (1)

to permit those who govern to do so without being unduly inhibited in the performance of that function by the threat of liability for tortious conduct; and (2) to limit judicial re-examination of basic policy decisions properly entrusted to other branches of government. [Citation omitted.]

*Ransom v. City of Garden City*, 113 Idaho 202, 205, 743 P.2d 70, 73 (1987).

The record does not reveal whether the district court believed that the repair of county roads was a routine matter, or a matter intertwined with the formulation of policy. We are unable to discern whether, in fact, a policy of road repair exists. Therefore, a material issue of fact remains which precludes summary judgment under the discretionary function immunity prong of I.C. § 6–904(1).

■ Another material issue, raised by the Binghams in their complaint but completely ignored by the County and the court, is whether the condition of Hot Springs Road was the result of improper design and construction. This allegation implicates I.C. § 6–904(8), a provision not discussed by the district court or the County. As we explained in *Bingham v. Idaho Dept. of Transp.*, 117 Idaho 147, 149, 786 P.2d 538, 540 (1989), "the plan or design of a highway is not immune from liability under Subsection (1)." Subsection 8 controls.

The County's second summary judgment motion, in addition to asserting immunity from suit under I.C. § 6–904(1), also contended that Eldon and Betty could not recover damages for the negligent infliction of emotional distress, and that Donna could not recover for emotional distress arising out of the death of her brother. The County also contended that the Binghams had no right of recovery for the wrongful death of Joseph and the unborn twins. The thinly developed record presented in this appeal from summary judgment leaves us able to

---

I.C. § 31–805 and I.C. § 40–604), and there were alternatives available. For example, the County could have closed the road if there was no money to repair it. *See* I.C. § 40–604(4). The

County could have also lowered the speed limit, or provided some financing scheme in lieu of providing the funds immediately, in order to keep up with road repairs.

**324**

do no more [9] than affirm the trial court's denial of the County's first motion for summary judgment, reverse the second summary judgment grant as to all claims against the County on the sole ground that material issues of fact remain with respect to the County's immunity under the Tort Claims Act, and remand this cause for further proceedings consistent with this opinion. Costs awarded to appellants.

JOHNSON, BOYLE and McDEVITT, JJ. concur.

BAKES, Chief Justice, concurring in part and dissenting in part:

I agree with that part of the Court's opinion which concludes that the summary judgment record in this case is inadequate to make a final decision on whether or not the county's action in maintaining the Hot Springs Road was immune under the discretionary function exception of the Idaho Tort Claims Act, I.C. § 6–904(1). I also agree with that part of the Court's opinion which concludes that the trial court erred in not recognizing that the plaintiffs' claim that the Hot Springs Road was improperly designed and constructed is subject to analysis under the special immunity requirements for highway plan or design claims under I.C. § 6–904(8), something which was not done below.

However, I would affirm the dismissal of the claims of both Eldon and Betty Bingham for negligent infliction of emotional distress for the claimed wrongful death of the unborn twins.

---

**9.** We note that I.C. § 1–205 empowers us, "if a new trial be granted," to "pass upon and determine all the questions of law involved in the case presented upon such appeal, and necessary to the final determination of the case." Here, no new trial has been granted.