808 P.2d 1300

**Beny FREEMAN and Joyce Freeman, husband and wife, Plaintiffs-Appellants,**

v.

**Joel JUKER, dba Juker Trucking, Defendant,**

and

**Twin Falls Highway District, Defendant-Respondent.**

No. 18191.

Supreme Court of Idaho, Twin Falls, October 1990 Term.

Feb. 25, 1991.

Rehearing Denied April 17, 1991.

Parsons, Smith, Stone & Fletcher, Burley, for plaintiffs-appellants. Randolph C. Stone argued.

Benoit, Alexander, Sinclair, Doerr, Harwood & High, Twin Falls, for defendant-respondent. John A. Doerr argued.

BAKES, Chief Justice.

Plaintiff appellants Beny and Joyce Freeman (Freemans) brought this personal injury action against defendant respondent Twin Falls Highway District (the District), claiming that the injuries Beny sustained from a truck crash resulted from the allegedly negligent maintenance of the highways under the District's control. The district court granted the District's motion for summary judgment on the basis that the District owed no duty to the Freemans, and that the District was immune from suit under the Tort Claims Act. Freemans appeal.

On September 26, 1987, Freeman was hauling a truckload of corn for Green Giant down the Magic Water Road grade near Buhl, Idaho, which is part of the District's road system. At approximately 1:30 or 2:00 a.m., Freeman was making his second or third trip of the night. As Freeman started down the grade, he attempted to shift gears but was unable to get the truck back into gear. When he attempted to slow the vehicle, the brakes failed. Eventually, Freeman lost control of the truck and crashed at the intersection of the Magic Water Road and Highway 30 in Twin Falls County. Freeman allegedly sustained injuries as a result of this crash.

Traveling from the top of the grade down, there are two runaway escape ramps—one toward the top of the grade, and one toward the bottom. The ramps had been constructed by the District. Freeman had traveled this section of highway for one or two weeks prior to the accident on approximately ten separate occasions. Freeman contends that, while he had seen the ramps before, they were both overgrown with Russian thistle, unsigned, unmarked and unposted. As such, the ramps could not be seen at night. Freeman also contends that the soil on the ramps was compacted and thus incapable of slowing a vehicle down. Finally, Freeman maintains that the bottom ramp was poorly designed in that the angle was too severe to make a safe exit therefrom.

Freeman argues that had the ramps been properly maintained he would have used one or the other of the ramps and avoided his ultimate injury. The respondent's evidence demonstrated that some maintenance work had been performed on the ramps by the District the day before the accident.

On May 2, 1989, the district court granted summary judgment to the District. Originally, the sole basis for the court's decision was that the District had no duty to install and maintain the runaway escape ramps. Freemans moved for reconsideration and on June 1, 1989, the trial court issued its second memorandum decision denying the motion. The basis for this decision was the same as the first, but also contained an alternative ruling that the installation and maintenance of the runaway escape ramps were discretionary functions, and therefore the District was immune from liability under the Idaho Tort Claims Act. On June 21, 1989, the district court entered an order pursuant to stipulation certifying the summary judgment in favor of the District as final pursuant to I.R.C.P. 54(b).

From these facts the following issues ensue: (1) whether the District had a legal duty to maintain the runaway escape ramps in a reasonably safe condition, and (2) whether the failure to maintain those ramps was a "discretionary function" within the meaning of I.C. § 6–904(1), and therefore immune from liability.

■ Initially, we note our standard of review. Motions for summary judgment should only be granted when no genuine issue of material fact exists after the pleadings, depositions, admissions and affidavits have been construed most favorably to the opposing or non-moving party, and the moving party is entitled to judgment as a matter of law. *Dekker v. Magic Valley Regional Medical Center*, 115 Idaho 332, 333, 766 P.2d 1213, 1214 (1988); *Anderson v. City of Pocatello*, 112 Idaho 176, 179, 731 P.2d 171, 174 (1986). The question of whether a legal duty in fact exists is a

question of law for the court to decide. *Kunz v. Utah Power & Light Company,* 526 F.2d 500 (9th Cir.1975). Since the question of the existence of a duty is one of law, we exercise free review. *Clark v. St. Paul Property & Liability Insurance Companies,* 102 Idaho 756, 639 P.2d 454 (1981).

## I

At the time this case was presented to the district court, neither the parties nor the trial court had the benefit of our recent holding in *Bingham v. Franklin County,* 118 Idaho 318, 796 P.2d 527 (1990).[1] In *Bingham* plaintiffs brought suit against the defendants for damages arising from an auto accident allegedly caused by the county's failure to maintain a public road. In discussing the defendants' potential liability, we noted that, "The county is charged by statute with the duty of maintaining the roads," referring specifically to I.C. §§ 31–801, –805, and 40–604(1) and (4).[2] The duty imposed upon counties to maintain the public roads by I.C. § 31–805 has been assumed and imposed upon highway districts by virtue of I.C. § 40–1310(1), which provides that "a highway district shall have all of the powers and duties that would by law be vested in the commissioners of the county...." Thus, the same statutory duties that were imposed upon the county in the *Bingham* case are imposed upon highway districts by § 40–1310(1).

I.C. § 40–109 defines the "Highway district system," and further defines "Highways" within each highway district.

(5) "Highways" means roads, streets, alleys and bridges laid out or established for the public or dedicated or abandoned to the public. Highways shall include

necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls, bridges, tunnels, grade separation structures, *roadside improvements, adjacent lands* or interests lawfully acquired, pedestrian facilities, and *any other structures, works or fixtures incidental to the preservation or improvement of the highways.* .... (Emphasis added.)

We conclude that, based upon the definition of "highways" in I.C. § 40–109(5), the runaway escape ramps are, as a matter of law, part of the highway district road system, being a *"roadside improvements, adjacent lands* or interests lawfully acquired, pedestrian facilities, and *any other structures, works or fixtures incidental to the preservation or improvement of the highways.* ...." I.C. § 40–109(5) (emphasis added). Under I.C. § 40–1310 and § 31–805, the highway district had a duty to maintain those runaway escape ramps as part of the highway district road system. *Bingham v. Franklin County,* 118 Idaho 318, 796 P.2d 527 (1990). The record in this case reflects a disputed question of fact over whether or not the escape ramps had been maintained, and therefore summary judgment should not have been granted based upon the breach of a duty to maintain the runaway escape ramps. *Bingham v. Franklin County, supra.*

## II

We now turn to the question of whether the failure to maintain the ramps was a "discretionary function" cloaking the District with immunity under I.C. § 6–904(1). In *Bingham v. Franklin County, supra,* we also considered whether Franklin Coun-

---

**1.** *Bingham v. Franklin County* was decided on August 17, 1990, after the briefing in this case was completed.

**2.** Title 31, "Counties and county law," includes chapter 8, "Powers and duties of board of com-

missioners." Section 805 gives the county board the "jurisdiction and power" (see I.C. § 31–801) "[t]o lay out, maintain, control and manage public roads...."

ty's failure to maintain a public road was a "discretionary function" as contemplated by I.C. § 6–904(1).[3] After emphasizing the difference between "discretionary function" immunity and "operational" immunity, we held:

> The record does not reveal whether the district court believed that the repair of county roads was a routine matter, or a matter intertwined with the formulation of policy. We are unable to discern whether, in fact, a policy of road repair exists. Therefore, a material issue of fact remains which precludes summary judgement under the discretionary function immunity prong of I.C. § 6–904(1).

As in *Bingham*, the record in this case does not contain a sufficient factual basis to determine whether the District's alleged failure to maintain the escape ramps was a discretionary function. It seems likely that the decision of whether or not to build the ramps in the first instance was probably the result of a deliberate decision bound up with the formulation of policy and therefore immune from liability. However, as mentioned previously, we are not here concerned with the decision to "build" the ramps, but, rather, the alleged failure to maintain those ramps. There is evidence in the record that some form of maintenance on the ramps was underway just prior to the accident in this case. These facts, however, without more, are too sparse to enable us to accurately ascertain whether such maintenance, or lack thereof, is a discretionary function. We therefore find the lower court's grant of summary judgment prematurely entered and reverse for further consideration in light of our holding in *Bingham v. Franklin County, supra,* which we recognize was not available to the trial court when it rendered its decision.

Reversed. Costs to appellant.

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.

---

**3. 6–904. Exceptions to governmental liability.**
—A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:
1. Arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.