827 P.2d 1178

**Nancy Carol ROBERTS, individually and as the personal representative of the Estate of James Arnold Roberts, deceased, Plaintiff–Appellant,**

v.

**Kelly J. Reed, Steven D. Clark; Lloyd E. Hedberg and Blanche M. Hedberg, husband and wife, Defendants,**

**and**

**TRANSPORTATION DEPARTMENT, By and Through the Idaho Transportation Board, Defendant–Respondent.**

No. 19102.

Court of Appeals of Idaho.

Oct. 29, 1991.

Joseph M. Imhoff, Jr. and Patrick D. Furey, Imhoff & Lynch, Boise, for plaintiff-appellant.

Larry EchoHawk, Atty. Gen., Donald J. Farley, Hall, Farley, Oberrecht & Blanton, Boise, for defendant-respondent.

WALTERS, Chief Judge.

This case arises from a fatal accident that occurred when a motorist failed to

stop at a marked intersection and collided with the decedent's vehicle traveling along the intersecting state through highway. On appeal, we are asked to determine whether the district court erred when, on summary judgment, it dismissed the wrongful death and personal injury claims asserted against the Idaho State Department of Transportation (the Department). For the reasons stated below, we reverse.

# I

## FACTS

The collision occurred at the intersection of State Highway 69 and Deer Flat Road, located in Ada County, Idaho. Highway 69 is a through highway[1] and has the right-of-way. Deer Flat Road is within the Ada County Highway District (ACHD). At the time of the accident, there was a stop sign placed along the right-hand side of Deer Flat Road, several feet before its intersection with the state highway. On September 19, 1987, at approximately three o'clock in the afternoon, James Roberts and his wife, Nancy, were traveling north on Highway 69. Stephen Clark and his passenger Carl Cox were proceeding east on Deer Flat Road. Clark failed to stop at the stop sign and entered the intersection, colliding with the Roberts' vehicle. As a result, James Roberts was killed and Nancy Roberts and Carl Cox both were injured.

Nancy Roberts brought an action against Clark, the Department, the ACHD, and the Hedbergs—the owners of the property located adjacent to the Deer Flat Road stop sign—seeking to recover damages for her own injuries and for the wrongful death of her husband.[2] With respect to her claims against the Department, Mrs. Roberts alleged that the Department was negligent in failing to erect and maintain proper traffic control signs. Specifically, Mrs. Roberts contended that the state was negligent in: (1) failing to erect a larger stop sign on Deer Flat Road, where greater emphasis and visibility were required; (2) failing to remove foliage encroaching upon Deer Flat Road, which obstructed the existing stop sign; (3) failing to place a "stop ahead" sign on Deer Flat Road; and (4) failing to place a "cross road ahead" sign on Highway 69, in advance of the intersection, to warn motorists of the potentially dangerous condition.

The Department moved for summary judgment. The district court granted the motion and dismissed the claims against the Department, ruling that the Department was not liable to Mrs. Roberts, either because the Department did not owe the duties Mrs. Roberts alleged had been breached, or because the Department was immune under the "discretionary function" exception to governmental liability, contained in I.C. § 6–904(1). Mrs. Roberts appeals.

# II

## STANDARD OF REVIEW

We begin by noting the standards of review applicable where an appellate court reviews the propriety of an order granting a summary judgment motion. "[I]f the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then the district court's order of summary judgment will be affirmed. I.C.R.P. 56(c). The pleadings and the evidentiary record will be construed liberally in favor of the party resisting the motion. *Anderson v. City of Pocatello*, 112 Idaho 176, 179–80, 731 P.2d 171, 174–75 (1986). We first determine whether Mrs. Roberts' claims allege a legal duty owed by the Department. We then decide whether the Department was immune from tort liability

1. For purposes of Title 40, Idaho Code, a "through highway" is the designation given to a main traveled state highway. I.C. § 40–310(11).

2. Roberts and Cox filed separate claims against Clark, ACHD, and the Hedbergs. Roberts additionally named and served the State of Idaho, Department of Transportation, as a defendant in her cause. Thus, although the causes were consolidated before the trial court, this appeal involves only Mrs. Roberts' claims against the Department.

under I.C. § 6–904(1). *See Bingham v. Franklin County,* 118 Idaho 318, 796 P.2d 527 (1990).

### III

### DOES PLAINTIFF'S CLAIM ALLEGE A DUTY OWED BY THE DEPARTMENT?

*A. The Department's Statutory Duty to Erect and Maintain Signs.*

■ Idaho Code § 40–201 charges the Department and each highway district within the state with the general duty to improve and maintain the highways within their respective jurisdictions. Highway 69 is within the Department's jurisdiction, which includes a thirty-three foot right-of-way on either side of the centerline of that highway. Deer Flat Road is within the jurisdiction of the ACHD. The Department concedes that its jurisdiction overlaps with that of the ACHD at the intersection of Deer Flat Road and Highway 69, and that placement of the stop sign at the intersection within thirty-three feet of the state highway was within the Department's jurisdiction. However, the Department claims it had no authority, and therefore no duty, to place any sign or to remove any obstructive foliage outside of its jurisdiction. It further avers that any duty to erect such a sign along Deer Flat Road, or to remove foliage encroaching upon Deer Flat Road that obscures the Department's stop sign, rested exclusively with the ACHD.

As Mrs. Roberts points out, however, the Department, alone, has an express statutory duty with respect to erecting and maintaining signs at its highways' intersections. Specifically, I.C. § 40–310(12) imposes upon the Department the responsibility to "[f]urnish, erect and maintain standard signs *on side highways* directing drivers of vehicles approaching a designated through highway to come to a full stop before en-

tering or crossing the through highway." (Emphasis added.) Similarly, I.C. § 40–313(1) states that the Department "shall erect and maintain, whenever necessary for public safety and convenience, suitable signs, markers, signals and other devices to control, guide and warn pedestrians *and vehicular traffic entering or traveling upon* the state highway system." (Emphasis added.) The legislature in no way qualified this duty by the condition that the sign-placing or maintenance activities occur exclusively within boundaries of the state highway system. Thus, contrary to the Department's position that it is without "jurisdiction" to place and maintain signs outside of its right-of-way, the Department has both the authority and an express statutory duty to do so.

*B. Delegation of the Statutorily Imposed Duty.*

■ In further support of its position, the Department cites section 1A–3.1 of the Manual on Uniform Traffic Control Devices (the Manual), which it adopted pursuant to I.C. §§ 40–313, 49–201(3) and 67–5203A. That section provides that "[t]raffic control devices shall be [placed] only by the authority of a public body or official having jurisdiction...." The Department argues that this provision expressly restricts its authority to place any signs beyond its right-of-way. We disagree for two reasons. First, the purpose of the rule is not to segregate the responsibility of sign-placement among the various highway authorities, as argued by the Department. Rather, when read in context, it is apparent that the rule is intended to prohibit advertisers and other private persons or organizations from placing signs along the highway right-of-way which do not comport with the Manual's regulatory purpose.[3]

■ Second, where, as here, the legislature enacts a statute requiring that an

**3.** Rule 1A–3.1 provides, in pertinent part:
Traffic control devices shall be palced [sic] only by the authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic. No traffic control device or its support shall bear any advertising or commercial message, or

any other message that is not essential to traffic control.
Any unauthorized sign placed on the highway right-of-way by a private organization or individual constitutes a public nuisance. All unofficial and nonessential signs should be removed.

administrative agency carry out specific functions, *i.e.*, furnish, erect and maintain signs on side highways, that agency cannot validly subvert the legislation by promulgating contradictory rules. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). An administrative agency is limited to the power and authority granted it by the legislature. *Fahn v. Cowlitz County*, 93 Wash.2d 368, 610 P.2d 857 (1980). *See also Kopp v. State*, 100 Idaho 160, 595 P.2d 309 (1979); *Abbot v. State Tax Comm'n*, 88 Idaho 200, 398 P.2d 221 (1965). Such delegated authority is primary and exclusive in the absence of a clearly manifested expression to the contrary. *Fischer v. Sears, Roebuck and Co.*, 107 Idaho 197, 200, 687 P.2d 587, 590 (Ct. App.1984). An agency must exercise any authority granted by statute within the framework of that statutory grant. *Adams v. Industrial Comm'n*, 26 Ariz. App. 289, 547 P.2d 1089 (1986). It may not exercise its sub-legislative powers to modify, alter, enlarge or diminish the provisions of the legislative act which is being administered. *Cray v. Kennedy*, 230 Kan. 663, 640 P.2d 1219 (1982); *Harris v. Alcoholic Bev. Control Appeals Bd.*, 228 Cal.App.2d 1, 39 Cal.Rptr. 192 (1964). Thus, although the legislature delegated some rule-making authority to the Department to adopt specifications for a uniform system of traffic-control devices, the Department was not thereby permitted to institute rules or policies limiting its ability to achieve its express statutory duties to place signs on side roads. Such rules would be in excess of the Department's rule-making authority, and therefore invalid and unenforceable.

■ The Department further contends that the ACHD accepted exclusive responsibility for placing necessary signs and performing necessary maintenance within the ACHD's jurisdiction, and for that reason

the ACHD, and not the Department, is solely liable for any failure of that duty. As evidence of this contention, the Department refers to a letter it wrote in May of 1977, in which it opined that it lacked authority outside of its right of way, and relinquished to the various county highway districts, including the ACHD, its former role of placing traffic control devices on rural side roads approaching its highways. However, as discussed above, an administrative agency may not alter, modify or diminish its statutorily-imposed responsibilities, either unilaterally or through agreement with another public or private entity, absent legislative authority to do so. Thus, the fact that the ACHD has assumed part of the Department's legal obligations might affect the rights and liabilities *between the Department and the ACHD*. However, such an agreement between these two entities does not alter the statutory duty owed *by the Department to the Roberts*.

Nor do we believe that judicial observance of the Department's statutory duty—to place necessary signs and conduct maintenance activities outside of its right-of-way—need result in the administrative confusion feared by the district court. Only the Department has the statutory duty to ensure that side-road traffic comes to a stop before crossing a through highway. To the extent that the Department lawfully enlists another entity to help execute its duties,[4] the primary responsibility to see that the obligation is fulfilled remains with the Department. Accordingly, we conclude that the district court erred when it determined that the Department had no legal duty to conduct any activity outside of its right-of-way.

## IV

### IS THE DEPARTMENT IMMUNE FROM LIABILITY UNDER I.C. § 6–904(1)?

Having determined that Mrs. Roberts' complaint against the Department states

---

With proper authority being given, construction contractors and public utility companies are permitted to erect construction and maintenance signs at work sites to protect the public, equipment, and workmen, provided

that such signs conform to the standards of this Manual.

4. Whether the Department lawfully may do so is not an issue presently before this Court.

legally cognizable claims under Idaho law, and that the Department does not escape liability by virtue of its own decision to assign responsibility to the ACHD, we next consider whether the Department was immune from liability under I.C. § 6–904(1). As explained below, we conclude that it was not.

The Idaho Tort Claims Act makes a government entity liable for damages arising out of its own negligent operational acts or omissions. I.C. § 6–901 *et seq. See Czaplicki v. Gooding Joint School Dist. No. 231*, 116 Idaho 326, 330–31, 775 P.2d 640, 644–45 (1989). The Act "makes liability the rule with certain specific exceptions." *Sterling v. Bloom*, 111 Idaho 211, 214–215, 723 P.2d 755, 758–59 (1986) (cited in *Bingham v. Idaho Department of Transportation*, 117 Idaho 147, 150, 786 P.2d 538, 541 (1989)). As indicated in its memorandum opinion and order on summary judgment, the district court held that the Department's decisions not to erect warning signs, and not to erect an enlarged stop sign, were immune under the "discretionary function" prong of the statute, I.C. § 6–904(1). That section provides:

A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which:

1. Arises out of any act or omission of an employee of the governmental entity *exercising ordinary care*, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation is valid, *or* based upon the exercise or performance or the failure to exercise or perform a *discretionary function or duty* on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

(emphasis added). Thus, where the entity is performing a statutory or regulatory function, it is free from liability for its acts and omissions only if it exercises ordinary care. *Bingham v. Franklin County*, 118 Idaho at 321, 796 P.2d at 530. However, where the government's imprudent exercise or performance of a discretionary function is the basis of the claim against it, the government is immune from liability. *Id.; Sterling*, 111 Idaho at 227, 723 P.2d at 755.

The discretionary function exemption from liability applies only to government decisions entailing planning or policy decisions. It does not apply to negligent operational decision-making, nor does it shield the negligent implementation of a statute or policy. *Czaplicki, supra.* The acts or omissions for which the government is liable necessarily will include a substantial amount of thoughtful determinations and elections among available alternatives. However, these types of decisions are distinct from decisions about law or governmental policy. *See* 5 K. DAVIS, ADMINISTRATIVE LAW TREATISE, § 27:11 (2d ed. 1984). Thus, the fact that a government function involves an element of choice or judgment, or requires the ability to make responsible decisions, does not bring that activity within the discretionary function exemption. *Sterling*, 111 Idaho at 227, 723 P.2d 755.

The issue presented in this case is analytically indistinguishable from that decided in *Bingham v. Department of Transportation, supra.* In that case, the district court applied I.C. § 6–904(1) to exempt the Department's determination of a highway speed limit and placement of warning signs as "activities involving the setting of regulation and policy." The Idaho Supreme Court reversed the lower court's decision, stating that

the Department of Transportation is constrained by statute and its own rules when it determines the speed limit and places warning signs along the highway. While it is true that the Department has some discretion in the placement of signs and the determination of speed limits on a highway, that discretion is confined by policy considerations that have already been determined by the legislature and the Department. The Transportation Department's placement of a sign along the highway, or its determination of a safe speed limit is not a policy setting activity; it is an *implementation* of regulations

and policies that already exist. These are activities for which the Department may be held liable if it fails to exercise ordinary care in carrying out these activities.

*Id.,* 117 Idaho at 150–51, 786 P.2d at 541–42 (emphasis original). *See also Bingham v. Franklin County,* 118 Idaho at 320–21, 796 P.2d at 529–30. Similarly, we hold that in this case, the Department's determinations whether to place signs warning of the approaching intersection, and its determination whether to erect an enlarged stop sign at the intersection, involved the implementation of the Department's policies as set forth in the Manual, and were not "discretionary" within the meaning of I.C. § 6–904(1). Accordingly, the Department may be held liable if Mrs. Roberts can show at trial that it failed to exercise ordinary care.

## V

### WERE THE DISTRICT COURT'S ALTERNATIVE GROUNDS FOR DISMISSAL IN ERROR?

When ruling on the summary judgment motion, the district court recognized that material issues of fact existed concerning the *breach* of the duty, but decided the motion by determining that the Department owed no duty for which it could be held liable to Mrs. Roberts. As discussed above, we conclude that the court erred in making this determination. We observe, however, that the district court also articulated alternative grounds for its rulings concerning the Department's duty to erect an enlarged stop sign on Deer Flat Road, its duty to place the "cross road ahead" sign along the State Highway 69, and the causal relation between absence of such a sign and plaintiff's damages. We address these issues in turn.

### A. Placement of a "standard-sized" stop sign does not necessarily shield the Department from liability.

■ We first consider the district court's determination that the Department had no duty to place a stop sign larger than

the 30 × 30 inch sign that it actually erected. It is true that the statute requires the Department to place "standard signs" along the side road necessary to direct traffic to a complete stop before crossing the through highway. I.C. § 40–310(12). Pursuant to its authority to adopt a manual and specifications for traffic control devices, the Department embraced, and articulated, the policy consideration that "[t]he purpose of traffic control devices and warrants for their use is to help insure highway safety by providing for the orderly and predictable movement of all traffic." Manual Rule 1A–1. The Manual further provides that, "STOP signs are intended for use where traffic is required to stop. The STOP sign shall be an octagon with white message and border on a red background. The standard size shall be 30 × 30 inches. *Where greater emphasis or visability is required, a larger size is recommended....*" Manual Rule 2B–4 (emphasis added). *See also* Manual Rule 2A–12. Unlike its designation of design, color, and word message, the Department has determined that the size of the stop sign may be varied, and in fact *should* be where emphasis or visibility so requires. Clearly, this regulatory guideline falls within the scope and purpose of I.C. § 40–310(12), requiring that the Department place standard signs directing side traffic to stop at the intersection.[5] Thus, when adopting the guideline, the Department was within its statutory authority. Having adopted such a guideline, however, the Department is bound to abide by it. Therefore, the fact that the Department erected a 30 × 30 inch stop sign at the intersection does not necessarily establish its fulfillment of its duty if, in fact, the Department failed to exercise ordinary care in implementing its own policies and guidelines.

### B. The driver's legal rights did not vitiate the Department's alleged duty to warn.

■ Next, we turn to the district court's determination that the Department

---

5. We do not read the statute as restricting the Department to erecting "standard sized," 30 × 30 inch stop signs, regardless of conditions requiring greater emphasis or visibility.

owed no duty to warn the decedent-driver, James Roberts, of the approaching intersection with Deer Flat Road. Mr. Roberts was the driver with the right-of-way. He was entitled to presume that traffic approaching from Deer Flat Road would, in fact, obey the law and stop at the stop sign. Further, Mr. Roberts was not legally required to take any affirmative, cautionary action to avoid the collision. From this premise, however, the district court concluded that, as a matter of law, Mr. Roberts *was not entitled* to any warning or notice of the approaching intersection.[6] We are not persuaded.

The purpose of warning signs is safety, not merely to inform motorists of the legal restrictions upon their conduct. As illustrated by highway statistics, including the case at hand, motorists do not always heed regulatory traffic signs, either as a result of their own inattention, or because of ineffective traffic signs, or both. We believe it was error for the court to determine as a matter of law that Mr. Roberts was not entitled to a warning permitting him to take precautionary measures for his own safety, such as giving special attention to the obscured side road, or braking as he approached the intersection. Nor does this appear to be the policy of the Department.[7]

### C. *Plaintiff's decedent was not excluded from the purview of the Manual's "warning sign" provisions.*

■ The district court also erred when it determined that, because Mr. Roberts was "familiar" with Highway 69 and aware of its intersection with Deer Flat Road, he

therefore was not within the class of persons sought to be protected by a "cross road ahead" sign. *Cf. Nettleton v. Thompson*, 117 Idaho 308, 310, 787 P.2d 294, 296 (Ct.App.1990). The court evidently relied on language in the Manual governing the placement of warning signs, which provides that, "Since warning signs are *primarily* for the benefit of the driver who is unacquainted with the road, it is very important that care be given to the placement of such signs." Manual Rule 2C–3 (emphasis added). We note, however, that the rule cited by the lower court was not written to the exclusion of persons familiar with the road on which the condition exists. Rather, as the policy language contained in the Application of Warning Signs section of the Manual indicates, the purpose of the signs is to warn of traffic hazards. Manual Rule 2C–1. *See also* Manual Rule 2A–1 (signs should be used where hazards are not self-evident; they are not ordinarily used to confirm rules of the road). Therefore, we find the lower court's contrary ruling to be in error.

### D. *The causal relationship between the absence of a warning and plaintiff's damages was a question for the jury to determine.*

■ Finally, the court ruled that Mrs. Roberts failed to come forward with any facts sufficient to establish the necessary causal relationship between the Department's alleged negligence in not erecting a "cross road ahead" sign and the death and injuries for which she seeks to recover in damages. In so ruling, the district court

---

6. The lower court's reliance on *Potter v. Mulberry*, 100 Idaho 429, 599 P.2d 1000 (1979), is misplaced. In *Potter*, the Idaho Supreme Court held that a motorist having the right-of-way at an intersection, and who otherwise was exercising due caution in view of the road conditions at the time of the collision, violated no duty of care and therefore could not be held contributorily negligent for her own injuries. That case has no application here, where the issue focuses, not on the duty owed *by the injured motorist* to protect him or herself, but on the duty owed *by the defendant Department* to protect the motorist.

7. Manual Rule 2C–1 provides, in part, that:

   "Warning signs are used when it is deemed necessary to warn traffic of existing or potentially hazardous conditions on or adjacent to a highway or street. Warning signs require caution on the part of the vehicle operator ... in the interest of his own safety and that of other vehicle operators...."

   Rule 2C–11, pertaining to the cross road sign, states: "The Cross Road Sign is intended for use on a through highway to indicate the presence of an obscured crossroad intersection."

held that Mrs. Roberts' claim was purely speculative. We disagree.

Proximate cause, or contributing proximate cause, is a necessary element of Mrs. Roberts' claim which she bears the burden of proving at trial.[8] *Dreyer v. Zero Refrigeration Lines, Inc.*, 92 Idaho 83, 437 P.2d 355 (1968), *overruled on other grounds*, *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974); *Smith v. Sharp*, 82 Idaho 420, 354 P.2d 172 (1960). Proximate cause is a factual issue for the jury to decide. *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984). Only in rare situations is the trial court justified in removing the issue of proximate cause from the consideration of the jury. *Fouche v. Chrysler Motors Corp*, 107 Idaho 701, 692 P.2d 345 (1984); *Papp v. Cantrell*, 96 Idaho 751, 536 P.2d 746 (1975); *Umphenour v. Yokum*, 118 Idaho 102, 794 P.2d 1158 (Ct.App.1990).

In the instant case, it is true that the record contains no *direct* evidence of proximate cause, as such proof generally is not possible. As articulated in one noted treatise on tort law:

> [N]o one can say with absolute certainty what would have occurred if the defendant had acted otherwise.... If, as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists.... When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved the child; but the experience of the community permits the conclusion that the absence of the guard played a significant part in the drowning. *Such questions are peculiarly for the jury....* And

whether the defendant's negligence consists of the violation of some statutory safety regulation, or the breach of a plain common law duty of care, the court can scarcely overlook the fact that the injury which has in fact occurred is precisely the sort of thing that proper care on the part of the defendant would be intended to prevent, and accordingly allow a certain liberality to the jury in drawing its conclusion.

PROSSER AND KEETON ON TORTS § 106, at 269–70 (5th ed. 1984) (emphasis added); *see also Robinson v. Williamsen Idaho Equipment Co.*, 94 Idaho 819, 498 P.2d 1292 (1972).

Idaho law permits Mrs. Roberts to establish proximate cause through circumstantial evidence. *Thomas Helicopters, Inc. v. San Tan Ranches*, 102 Idaho 567, 633 P.2d 1145 (1981); *Mann*, 95 Idaho 732, 518 P.2d 1194; *P.N. Cedar, Inc. v. D & G Shake Co.*, 110 Idaho 561, 716 P.2d 1333 (Ct.App. 1986). In this case, we believe there exists sufficient circumstantial evidence from which a jury reasonably could infer a causal relationship between Mrs. Roberts' injuries and the Department's alleged breach. Thus, if the jury determines that the Department breached its duty to exercise ordinary care by not erecting a "cross road ahead" sign, it then properly may infer from the circumstantial evidence—*e.g.*, that Mrs. Roberts' husband could have taken some cautionary measure to avoid a collision when approaching the intersection, and that a collision in fact occurred—that the absence of the warning was a substantial factor causing the collision and resultant injuries and death. *See Henderson v. Cominco American, Inc.*, 95 Idaho 690, 518 P.2d 873 (1973); *P.N. Cedar, Inc., supra.* We conclude, therefore, that the dis-

---

**8.** The district court noted that the only evidence in the record is Mrs. Roberts' deposition testimony that she "believed" her husband was aware of the intersection. The court determined that such evidence tends to show that the nonexistence of a warning sign was not a proximate cause of her claimed damages. Upon our review of the record, we conclude that Mrs.

Roberts' subjective impressions as to what her husband knew or did not know is not competent evidence to establish what he knew in fact.

Regardless, a plaintiff's knowledge of a condition does not necessarily vitiate a duty owed to the plaintiff. *Bingham v. Franklin County*, 118 Idaho at 320, 796 P.2d at 529; *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989).

trict court erred in removing this issue from the jury's consideration.

## VI

## CONCLUSION

The district court erred in determining that the Department owed no statutory duty to erect or maintain signs beyond its right-of-way. We also determine that, pursuant to *Bingham v. Department of Transportation,* the Department was not shielded from liability under I.C. § 6–904(1). We also conclude that the placement of a 30 × 30 inch stop sign at the intersection did not necessarily establish that the Department fulfilled its regulatory function. Further, we hold that the fact that Mr. Roberts had the right-of-way at the intersection did not negate any duty that the Department may have had to warn of the approaching intersection. Moreover, the fact that Mr. Roberts was "familiar" with the intersection did not remove him, as a matter of law, from the class of persons for whose benefit warning signs are intended, nor did it negate Mrs. Roberts' contention that the lack of warning was a proximate cause of the collision. We therefore reverse the district court's order dismissing Mrs. Roberts' claims against the Department. The case is remanded for further proceedings.

Costs to appellant, Nancy Roberts. No attorney fees allowed on appeal.

SWANSTROM and SILAK, JJ., concur.