727 P.2d 1183

**Thomas K. LEWIS, and Karen L. Lewis, husband and wife, Individually and as Guardians Ad Litem for Sabrina Lewis, Plaintiffs-Appellants,**

v.

**ESTATE OF Robert SMITH, Alvin Harward and Howard Lein, d/b/a Star-Lite Apartments, Defendants,**

**and**

**City of Blackfoot, a municipal corporation of the State of Idaho, Defendant-Respondent.**

No. 15964.

Supreme Court of Idaho.

Oct. 15, 1986.

Donald J. Chisholm and John A. Bradley, Burley, for plaintiffs-appellants.

Charles Johnson, III, Pocatello, for defendant-respondent.

HUNTLEY, Justice.

This appeal arises out of a grant of summary judgment for the City of Blackfoot on grounds that the Lewises' complaint against the city is barred by provisions of the Idaho Tort Claims Act and fails to state a cause of action under the Uniform Fire Code. The Lewises appeal from that grant.

The Lewises' claim for damages alleges two distinct breaches of duty by the City of Blackfoot. First, that the city failed to adequately and regularly inspect and follow up on the inspection of the Star-Lite Apartments, as required by the city's adoption of the Uniform Fire Code and Life Safety Code. Secondly, the Lewises contend that the city's failure to abate or correct known fire code violations in the Star-Lite Apartments, was an affirmative breach of its duty to the occupants of the Star-Lite Apartments, rendering the city liable in tort for the Lewises' injuries in a subsequent fire.

The pertinent facts are as follows: On December 16, 1983, appellants Thomas K. Lewis and Karen L. Lewis, husband and wife, and their child, Sabrina Lewis, suffered injuries as a result of a fire at the Star-Lite Apartments in which they lived. Previously, on December 25, 1980, the city had conducted a fire hazard inspection of the Star-Lite Apartments, at the request of one of the owners of the complex. At that time, thirteen violations were found. The city did not act to correct the violations. Moreover, the city had ceased to regularly inspect for fire hazards absent specific requests from members of the public, as a result of a cut back in local funding, occasioned by the passage of the One-percent Initiative.

In their complaint, the Lewises contend that regular inspections of the Star-Lite Apartments and corrections of the known violations there would have prevented the injuries incurred during the fire of December 16, 1983. The Lewises further contend that the City of Blackfoot was obligated, after its adoption of the Uniform Fire Code and the Life Safety Code, and all subsequent additions and/or supplements to those codes, in Ordinance No. 835, dated September 5, 1978, to enforce those codes regardless of economic hardship. We deal with each of the Lewises' contentions in turn.

Since this case comes to us on appeal from summary judgment, we must accept as true the non-moving party's (*i.e.* appellants/Lewises') factual contentions. *See, e.g., Davenport v. Burke,* 27 Idaho 464, 473, 149 P. 511, 515 (1915).

## I. THE CITY'S FAILURE TO CONDUCT REGULAR INSPECTIONS

The trial court found that the city's determination as to when and how to conduct fire inspections fell within the ambit of unique, governmental decision-making. The trial court then applied I.C. § 6–904(1), which provides an exception from liability to governmental entities engaged in "discretionary functions or duties." I.C. § 6–904(1) specifically provides:

> **6–904. Exceptions to governmental liability.**—A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which: (1) arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

█ This court recently articulated the "planning/operational analysis" for determining whether a particular governmental action is discretionary. *Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986). Under this test, discretionary governmental policy-making or planning activities are exempt from liability under I.C. § 6–904(1), while, "operational activities—activities involving the implementation of discretionary statutory and regulatory policy—are *not* immunized and, accordingly, must be performed with due [ordinary] care." *Jones v.*

*City of St. Maries,* 111 Idaho 733, 727 P.2d 1161 (1986).

█ Under the "planning/operational test," the city's failure to provide regular fire inspections can still only be viewed as the result of governmental decision-making and exempt from liability pursuant to I.C. § 6–904(1). The Lewises have made no allegation that the inspection, itself, was performed negligently. Rather, the Lewises contend that the infrequency of inspections and failure to perform follow up inspections were proximate causes of their injuries. The city admitted that, as a result of the One-percent Initiative, cutbacks in the fire inspection program were instituted. Specifically, inspections were made only after a public request for such had been received, and follow up inspections (other than "letters of recommended action") were eliminated.

In explaining the exemption from liability for discretionary activity provided by § 2680(a) of the Federal Tort Claims Act, a section analogous to I.C. § 6–904(1), the U.S. Supreme Court stated:

> When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding. . . . Judicial intervention in such decision-making through private tort suits would require the courts to "second-guess" the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention and policy-making that the discretionary function exception was designed to prevent. *United States v. S.A. Empresa de Viacao Aerea Rio Gran-*

*dense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 2768, 81 L.Ed.2d 660 (1984).

The Court in *Varig* explained that decisions as to how to operate in the face of shortages occasioned by lack of funding are precisely the sort of discretionary, policy-making decisions exempted from liability under the Federal Tort Claims Act, and analogously, under the Idaho Tort Claims Act.

For the foregoing reasons, the Lewises have failed to state a viable cause of action against the City of Blackfoot for the city's failure to conduct regular fire violation inspections.

## II. THE CITY'S FAILURE TO ABATE KNOWN FIRE CODE VIOLATIONS

Appellants next contend that the city's failure to abate, or cause to be corrected, the code violations discovered in the inspection of December 15, 1980, was an affirmative breach of the city's duty to adequately enforce the Uniform Fire Code and Life Safety Code, adopted by the city in 1978.

■ The trial court determined that the Lewises could not state a viable claim against the City of Blackfoot for failure to enforce the Uniform Fire Code since "cities have not [sic] authority or duty to act perforce the state enactments." Such is true. Cities are not obliged to enforce state enactments. However, a city's own enactment may result in the imposition of a duty or standard of conduct for city employees relative to the enactment. As already noted, the city, however, still retains the power to make policy decisions regarding the enforcement of such enactments, taking into account "such practical considerations as staffing and funding." *Varig, supra,* at 2768. We also note that, under the I.T.C.A., cities may be liable in tort, as may all governmental entities. (I.C. § 6–904(1)). In the instant case, the City of Blackfoot also enacted the Uniform Fire Code. This action clearly involves policy judgment. However, it is the implementation of the code which is the issue.

Whether or not the city fire code or other ordinance set up a non-discretionary duty under the guidelines of our *Sterling* decision is a matter which the trial court did not have the opportunity to address, and which the parties did not have an opportunity to evaluate in preparing their submissions in support or opposition to the motion for summary judgment. Accordingly, this case must be reversed and remanded to the district court for further proceedings consistent with our decision in *Sterling*.

Affirmed in part, reversed in part, remanded for further proceedings. No Costs to appellant. No attorney fees awarded.

DONALDSON, C.J., and BAKES and BISTLINE, JJ., concur.

BAKES, Justice, concurring specially:

While I did not concur with the *Sterling* decision, and its interpretation of the Idaho Tort Claims Act, it does now command a majority of the votes on this Court and, accordingly, I concur in the Court's opinion that this matter must be remanded for further development under the standards set out in *Sterling*.

SHEPARD, Justice, dissenting.

I dissent on the same basis and for the same reasons expressed in *Jones v. St. Maries*, 111 Idaho 733, 727 P.2d 1161 (1986). I further point out that the majority in the instant case errs more grievously than in *Jones*. Here the circumstances clearly reveal the performance of a regulatory function by a governmental entity, which circumstances were clearly held not to support a cause of action under the Federal Tort Claims Act. *United States v. Varig Airlines*, 692 F.2d 1205 (9th Cir.1982), *rev.*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).