886 P.2d 330

**George Riley LAWTON and Kimberly Lawton, husband and wife, Plaintiffs–Respondents,**

v.

**The CITY OF POCATELLO, Defendant–Appellant,**

and

**Antonio Baca Garcia and John and Jane Does 1–3, Defendants.**

No. 20830.

Supreme Court of Idaho, Pocatello, September 1994 Term.

Dec. 2, 1994.

Jones, Chartered, Pocatello, for appellant. Jesse C. Robison argued.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for respondents. Gary L. Cooper argued.

TROUT, Justice.

This is a personal injury action which arose from a motorcycle accident that occurred in Pocatello, Idaho. The Respondents, George and Kimberly Lawton, recovered from the City of Pocatello (the City) on the theory that it was negligent in the design of the intersection where the accident occurred and that such negligence was a proximate cause of the accident. The City has appealed.

## I.

## BACKGROUND

The accident giving rise to this appeal took place on Oak Street in Pocatello, Idaho. Because the layout of the streets in the area surrounding the accident site is somewhat confusing, a brief description may be helpful together with reference to a drawing of the site which is appended to this opinion. The accident occurred a short distance east of the point where Jefferson Avenue intersects Oak Street from the north at a right angle. Movement of traffic through this intersection is controlled by a traffic light. Less than 100 feet east of the light, 13th Avenue intersects Oak from the south at a 45 degree angle. A stop sign controls traffic entering Oak Street from 13th Avenue.

On July 30, 1990, George Lawton (Lawton) was driving a motorcycle eastbound on Oak Street. Shortly after he passed through the light at the Oak–Jefferson intersection, he collided with a van driven by Antonio Baca Garcia (Garcia). Garcia, whose view of oncoming traffic was obstructed by vehicles stopped at the Oak–Jefferson intersection, was attempting to cross Oak from a private driveway on its north side to reach 13th Avenue. The collision occurred when Garcia's van crossed the eastbound lane of Oak. Lawton and his wife sued both Garcia and the City. They claimed that Garcia was negligent in failing to yield to the oncoming motorcycle. Garcia admitted his negligence.

The Lawtons also sought to hold the City liable for the negligent design of the intersection.

The Lawtons' claim against the City was based on its failure to implement certain safety measures as outlined in the 1972 Traffic Operations Program to Increase Capacity and Safety (TOPICS) report. This report, adopted by the City in an attempt to secure federal highway funds, included a proposal for installing a raised median down the center of Oak Street on the east side of the Oak–Jefferson intersection. The purpose of the median was to prevent left turns onto Oak from 13th Avenue by requiring all traffic exiting 13th Avenue to turn right. However, it would also have prevented the maneuver attempted by Garcia. When federal funds were unavailable, the City directed its city engineer to implement design improvements, including improvements to the Oak–Jefferson area, as available funds allowed. The city engineer ultimately decided not to install a raised median on Oak Street.

Cross-motions for summary judgment by the Lawtons and the City were denied by the district court and the case was tried to a jury. At the close of evidence, the City moved for a directed verdict on the grounds that it was immune from liability and that the plaintiffs had failed to establish a negligence cause of action. The Lawtons moved for a directed verdict on the issue of the City's immunity from liability. The trial court denied the City's motion, but granted the Lawtons', preventing the immunity defense from going to the jury. The jury returned a verdict for the Lawtons allocating fault at seventy percent to Garcia and thirty percent to the City. Damages were assessed at $537,000. The City then made a motion for JNOV and a motion for new trial, both of which were denied. After costs were awarded and the verdict was reduced by the percentage attributable to Garcia's negligence, the total judgment entered against the City was $174,987.59. The City appealed.

## II.

## GOVERNMENTAL IMMUNITY UNDER IDAHO CODE § 6–904(7)

In granting the Lawtons' motion for directed verdict, the district court concluded, as a matter of law, that the City was not entitled to governmental immunity under the Idaho Tort Claims Act. The City challenges this ruling.

■ The Idaho Tort Claims Act, I.C. §§ 6–901—929, abrogates the doctrine of sovereign immunity and renders a governmental entity liable for damages arising out of its negligent acts or omissions. However, it preserves the traditional rule of immunity in certain specific situations. *See Sterling v. Bloom*, 111 Idaho 211, 214–15, 723 P.2d 755, 758–59 (1986). At trial, the City claimed immunity pursuant to both I.C. §§ 6–904(1), (7). Although it is not clear whether it relied on one provision or both, the district court granted the plaintiffs' motion for directed verdict on the issue of immunity. On appeal, the City contends that this issue should have at least gone to the jury.

■ A directed verdict is proper only where the evidence is so clear that all reasonable minds could reach only one conclusion: that the moving party should prevail. Accordingly, where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied. *See, e.g., Sidwell v. William Prym, Inc.*, 112 Idaho 76, 78, 730 P.2d 996, 998 (1986). On appeal, our standard of review is the same. *Id.* Thus, the proper inquiry is whether, in viewing the evidence in a light most favorable to the City, reasonable minds could find in its favor on the issue of governmental immunity.

In examining the propriety of the district court's ruling, we must first ascertain what the City was required to establish to be accorded immunity under § 6–904(7).[1] Prior to its amendment in 1988, subsection (7),

---

1. I.C. § 6–904(7) applies to any claim which "arises out of a plan or design for construction or improvement to the highways, roads, [or] streets...." Because it is clearly implicated in this case, we will first analyze the district court's ruling in terms of this subsection. Whether I.C. § 6–904(1) may also apply, or whether the two subsections are mutually exclusive will be discussed later in the opinion.

then numbered subsection (8), provided immunity for claims:

Aris[ing] out of a plan or design for construction or improvement to the highways, roads, streets, bridges, or other public property where such plan or design is prepared in substantial conformance with engineering or design standards in effect at the time of preparation of the plan or design, approved in advance of the construction ... by the legislative body of the governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval.

In *Bingham v. Idaho Dep't of Transp.*, 117 Idaho 147, 786 P.2d 538 (1989), we interpreted this language to require a plan or design that conformed with existing design standards and that was approved in advance of construction. Thus, to gain immunity under former subsection (8), three elements must have been met: the claim must have arisen from (1) a plan or design for construction or improvement; (2) prepared in substantial conformance with existing engineering or design standards; *and* (3) approved in advance of the construction by the legislative body exercising discretion to give authority for such approval. *Burgess v. Salmon River Canal Co.*, 119 Idaho 299, 307, 805 P.2d 1223, 1231 (1991) (citing *Bingham*).

In its current form, I.C. § 6–904(7) provides immunity to a governmental entity for any claim which:

Arises out of a plan or design for construction or improvement to the highways, roads, streets, bridges, or other public property where such plan or design is prepared in substantial conformance with engineering or design standards in effect at the time of preparation of the plan or design *or* approved in advance of the construction by the legislative body of the governmental entity or by some other body or administrative agency, exercising

discretion by authority to give such approval. (emphasis added).

■■■ The addition by the legislature of the word "or" to I.C. § 6–904(7) clearly indicates that immunity is available under the provision if the governmental entity shows substantial conformance or advance approval. Therefore, under I.C. § 6–904(7) as amended, the City was required to establish (1) the existence of a plan or design that was (2) *either* prepared in substantial conformance with existing engineering or design standards *or* approved in advance of construction by the legislative or administrative authority. This interpretation is consistent with common usage of the word "or" and with our prior decisions.[2] *See, e.g., Sterling v. Bloom*, 111 Idaho 211, 227, 723 P.2d 755, 771 (1986) (use of the disjunctive "or" demonstrates that the two clauses contained in I.C. § 6–904(1) describe mutually exclusive conduct).

■■■ In applying this test, it is clear that there was sufficient evidence to raise factual questions regarding subsection (7) immunity and preclude a directed verdict. First, the Lawtons argue that no plan existed because the written TOPICS report was approved for the purpose of gaining federal funding. After it became clear that federal funding was unavailable, the changes actually made to the Oak–Jefferson area were not incorporated into a written plan formulated specifically for that purpose. However, I.C. § 6–904(7) does not require a written plan. The City produced evidence that after it was aware there would be no federal funding, its city engineer was directed to proceed with cost-effective improvements to the area in question. This could plausibly constitute a "plan or design for ... improvement to the ... streets" and we find that a reasonable juror could so conclude.

Second, although the Lawtons produced expert testimony that the modifications made to the area surrounding the accident site did not meet then existing engineering stan-

2. We are aware that language in *Bingham v. Idaho Dep't of Transp.*, 117 Idaho 147, 786 P.2d 538 (1989), might be interpreted as imposing its requirements on the current version of I.C. § 6–904(7). However, when *Bingham* was decided we were not faced with an issue requiring the construction of the amended version of the statute. Therefore, any comments in *Bingham* implying that its requirements apply under the revised statute are merely dicta and are hereby disapproved.

dards, the City's experts testified that the decision not to use a raised median was in compliance with the Manual on Uniform Traffic Control Devices (MUTCD).[3] Viewing this evidence in a light most favorable to the City, we believe that a reasonable juror could conceivably find that there was substantial compliance with existing design standards.

Finally, although the City did approve the 1972 TOPICS report, it is not clear whether a plan or design existed incorporating the actual changes made to the Oak–Jefferson area. Because there is a question as to the existence of a plan, there is necessarily a factual question regarding the issue of advance approval.

In sum, the City produced evidence sufficient to allow a reasonable juror to find the existence of a plan or design that either met existing design standards or was approved in advance of construction. These factual questions should have been submitted to the jury and the district court erred in granting the plaintiffs' motion for directed verdict.

## III.

## GOVERNMENTAL IMMUNITY UNDER IDAHO CODE § 6–904(1)

It is not clear whether the district court granted the Lawtons' motion for directed verdict based solely on an application of I.C. § 6–904(7), or whether it also applied § 6–904(1). To clarify the matter, either provision might apply in this case depending upon whether the jury finds that the City failed to formulate a plan or design. As we stated in *Bingham v. Idaho Dep't of Transp.*, "the plan or design of a highway is not immune from liability under Subsection (1)." 117 Idaho at 149, 786 P.2d at 540. Thus, if the jury concludes that the City formulated a plan for improvements to the area in question, it would then have to determine whether that plan substantially conformed to existing design standards or whether it received advance approval.

■ On the other hand, if the jury concludes that no plan or design existed, it would be required to determine whether the City is entitled to immunity under I.C. § 6–904(1). This provision contains two prongs, each of which provides a different degree of governmental immunity.[4] Under the discretionary function prong, a governmental entity is entitled to absolute immunity regarding claims arising from the performance of a "discretionary function." However, under the operational prong a government entity can be liable if it fails to exercise ordinary care in implementing a pre-established policy. *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986).

■ In determining whether an action is discretionary or operational we first look at the nature of the challenged conduct. Routine matters not requiring evaluation of broad policy factors will likely be "operational," whereas decisions involving a consideration of the financial, political, economic, and social effects of a particular plan are likely "discretionary" and will be accorded immunity. *Ransom v. City of Garden City*, 113 Idaho 202, 205, 743 P.2d 70, 73 (1987). We next evaluate the challenged conduct in light of the dual policies served by the discretionary function exception: to permit those who govern to do so without being unduly inhibited by the threat of liability and to limit judicial second-guessing of basic policy decisions entrusted to other branches of government. *Id.*

---

3. The MUTCD is a national publication promulgated by the Federal Highway Administration. It is widely recognized as the most authoritative work in the area of traffic engineering standards, a fact readily admitted by the Lawtons' own expert. On May 4, 1972, the City of Pocatello adopted the 1971 edition of the MUTCD as providing the controlling specifications for its traffic control signs, signals and devices. Pocatello, Idaho, Ordinance No. 1675 (May 4, 1972).

4. I.C. § 6–904(1) specifically provides immunity for any claim which:

Arises out of any act or omission of an employee of the governmental entity exercising ordinary care, in reliance upon or the execution or performance of a statutory or regulatory function, whether or not the statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

■ In this case, the decision to adopt the TOPICS report was a discretionary function, as was the decision to recognize and utilize the MUTCD. These decisions, involving a consideration of broad policy factors, were clearly legislative in nature. However, the challenged conduct was the decision not to use a raised median at the site of the accident. This determination involved the routine implementation of the City's pre-determined policies as established by the 1972 TOPICS report or the MUTCD. Since it did not involve basic policy considerations, we conclude that the decision was not a discretionary function within the meaning of I.C. § 6–904(1). *Cf. Bingham v. Idaho Dep't of Transp.,* 117 Idaho at 150–51, 786 P.2d at 141–42 (even though they involve an element of choice, no discretionary immunity accorded decisions regarding the placement of street signs and the determination of speed limits since such decisions merely implement Department policy as set forth in the MUTCD).

The jury in this case was instructed that the City could be liable if it were negligent in making improvements to the Oak–Jefferson area and if such negligence were a proximate cause of the accident. Thus, although the granting of the Lawtons' motion for directed verdict on the issue of immunity was improper, the jury was effectively given the correct instruction with regard to § 6–904(1) immunity. Any error claimed by the City as to subsection (1) immunity was harmless.

### IV.

### JURY INSTRUCTION NUMBER 21

The City contends that the district court committed reversible error by instructing the jury, by way of jury Instruction No. 21, that the violation of a non-mandatory provision of the MUTCD constitutes negligence per se. We agree.

Jury Instruction No. 21 provided in relevant part:

There was in force in the City of Pocatello at the time of the [accident] a certain ordinance adopting the [MUTCD]. The [MUTCD] provided that intersections controlled by traffic lights *shall* be designed

so that no movement that may involve an unexpected crossing of pathways of moving traffic should be indicated during any green or yellow interval, except when [listing certain exceptions].

. . . .

A violation of these provisions constitutes negligence on the part of the City of Pocatello. (emphasis added)

■ Although not stated specifically, the parties agree that Instruction No. 21 refers to section 4B–16 of the MUTCD, which provides:

**4B–16 Unexpected Conflicts During Green or Yellow Interval**

No movement that may involve an unexpected crossing of pathways of moving traffic *should* be indicated during any green or yellow interval, except when:

1. The movement involves only slight hazard;

2. Serious traffic delays are materially reduced by permitting the conflicting movement; and

3. Drivers and pedestrians subjected to the unexpected conflict are effectively warned thereof.

When such conditions of possible unexpected conflict exist, warning may be given by a sign or by the use of an appropriate signal indication as set forth in section 4B–7. The foregoing applies to vehicle-pedestrian conflicts as well as to vehicle-vehicle conflicts. (emphasis added).

Section 1A–5 of the MUTCD provides that the term "should" is "an advisory condition" and that, where it is used, the action it refers to is "recommended but not mandatory." Therefore, the traffic indications described in section 4B–16 are merely recommendations, not mandatory in nature.

Although Instruction No. 21 quotes most of section 4B–16 verbatim, the lead-in to the quoted language states that "[t]he [MUTCD] provided that intersections controlled by traffic lights *shall* be designed . . . ." This language implies that section 4B–16 is mandatory when, in fact, it is not. Furthermore, the instruction provides that a violation of a

non-mandatory provision of the MUTCD is negligence per se.

In *Esterbrook v. State,* 124 Idaho 680, 863 P.2d 349 (1993), we were presented with a nearly identical situation. The district court in that case had instructed the jury that a violation of certain non-mandatory provisions of the MUTCD constituted negligence as a matter of law. In reviewing the instructions we pointed out that to form the basis of an assertion of negligence per se, the statute or regulation must clearly define the required standard of conduct. *Id.* at 682, 863 P.2d at 351 (citing *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1986)). Since the provisions of the MUTCD at issue were optional, they did not define any required standard of conduct. Accordingly, we held that the instructions were erroneous and prejudicial. *Id.* 124 Idaho at 683, 863 P.2d at 352.

■ The Lawtons argue that they did not have the benefit of *Esterbrook* and were relying instead on *Curtis v. Canyon Highway Dist. No. 4,* 122 Idaho 73, 831 P.2d 541 (1992), a case also dealing with negligence per se instructions based on provisions of the MUTCD. Admittedly, there is language in *Curtis* which might be interpreted as saying that even non-mandatory provisions of the MUTCD can be the basis of a negligence per se instruction. However, as we stated in *Esterbrook,* "the Court [in *Curtis*] was considering mandatory provisions of the MUTCD ... [and] we did not intend to imply that all provisions in the MUTCD were mandatory." *Esterbrook,* 124 Idaho at 682, 863 P.2d at 351. To further clarify the matter, we hold once again that a non-mandatory provision of the MUTCD cannot be the basis of a negligence per se jury instruction. To the extent *Curtis* indicates that failure to comply with even non-mandatory provisions is negligence, it is clearly contrary to prior and subsequent case law and is expressly overruled.

■ When reviewing jury instructions on appeal, this Court must ascertain whether the instructions, considered as a whole, fairly and adequately present the issues and state the applicable law. Reversible error occurs when an instruction misleads the jury or prejudices a party. *Manning v. Twin Falls Clinic & Hosp., Inc.,* 122 Idaho 47, 830 P.2d 1185 (1992). Although the parties to this dispute may not have had the benefit of *Esterbrook,* that decision is fully consistent with settled principles of tort law and with our standard of review. Instruction No. 21 misstated the applicable law and likely confused the jury. For this reason, in addition to the failure to submit the immunity defense to the jury, the verdict in favor of the Lawtons is vacated and the case is remanded for a new trial.

Although our disposition of the above issues requires that the case be remanded, the City has made additional assignments of error on appeal. We will address each, in turn, to provide further guidance to the district court on retrial.

## V.

### JURY INSTRUCTION NUMBER 22

The City also contends that the district court erred in giving jury Instruction No. 22. This instruction provided:

There was in force in the City of Pocatello at the time of the [accident] a certain ordinance adopting the [MUTCD]. The [MUTCD] provided that drivers approaching a signalized intersection or other signalized area, such as a·mid-block crosswalk, shall be given a clear and unmistakable indication of their right-of-way assignment.

A violation of these provisions constitutes negligence on the part of the City of Pocatello.

■ Although the City maintains that this instruction was prejudicial and confusing, where a party requests an instruction and the trial court gives that instruction, that party may not thereafter claim that the giving of the instruction was error. *See, e.g., Blankenship v. Weidner,* 120 Idaho 234, 815 P.2d 432 (1991). In this case, the City requested an instruction nearly identical to Instruction No. 22.[5] Therefore, it may not now

---

5. In fact, the only difference between the City's requested instruction and that given was that,

claim that the giving of substantially the same instruction was erroneous. *See also Anderson v. Gailey,* 97 Idaho 813, 555 P.2d 144 (1976) (where instruction given was substantially identical to plaintiffs' requested instruction, plaintiffs were precluded from assigning it as a ground for reversal on appeal).

## VI.

## EXCLUSION OF EXPERT TESTIMONY AS TO THE CAUSE OF THE ACCIDENT

The City argues that, having given jury Instruction No. 22, the district court erred in prohibiting the City's expert, James Pline, from stating his opinion that the cause of the accident was not related to a failure to give a right-of-way indication to drivers approaching a signalized intersection.

It was established at trial that Pline was intimately familiar with the MUTCD and his technical background qualified him as an expert in traffic engineering. Pline testified that, in his opinion, the points at which Oak Street converges with Jefferson Avenue and 13th Avenue constitute two separate intersections and that only the Oak–Jefferson intersection was "signalized." However, when counsel for the City asked Pline what the existence of one or two intersections had to do with the *cause* of the accident, the plaintiffs objected. The district court sustained the objection.

Section 4B–12 of the MUTCD, which was the basis for Instruction No. 22, provides that drivers approaching a signalized intersection shall be given a clear indication of their right-of-way assignment. The City argues that Pline would have testified that since Garcia was not approaching the signalized Oak–Jefferson intersection, any failure to give a clear indication of right-of-way in a signalized intersection could not, therefore,

have caused the accident. Such a statement is arguably the equivalent of an opinion that the City did not violate section 4B–12 of the MUTCD and, in this form, would have been within Pline's area of expertise.

However, our standard of review is clear: the admissibility of expert opinion testimony is discretionary with the trial court and its rulings will not be disturbed on appeal absent a showing of an abuse of that discretion. *Stoddard v. Nelson,* 99 Idaho 293, 297, 581 P.2d 339, 343 (1978). The district judge apparently sustained the objection to the City's question on the ground that Pline was not qualified to testify as to the cause of the accident. Given the form of the question [6] and the fact that the City made no offer of proof to clarify the matter, we hold that the district court did not abuse its discretion in sustaining the plaintiffs' objection.

## VII.

## EVIDENCE OF OTHER ACCIDENTS

At trial, the Lawtons' expert made reference to the reports of other accidents that had occurred in the Oak–Jefferson–13th area both before and after the occurrence of the collision between Garcia and Lawton. The City made a motion *in limine* seeking an order limiting the plaintiffs from introducing evidence of prior and subsequent accidents. The district court denied this motion and allowed the Lawtons' expert to refer to the other accidents. The City now contends that the admission of this evidence constituted reversible error.

The City's first contention, that "the accident reports were clearly hearsay," is without merit. The reports were not, as the City contends, admitted into evidence. Rather, the accidents reported were referred to by the Lawtons' expert, Kenneth Cotting-

rather than stating that a violation of the MUTCD provision was negligence per se, the City's instruction left it to the jury "to decide whether th[e] provision was mandatory, advisory, or permissive." The City's assignment of error apparently has nothing to do with the fact that instruction number 22 was given in the form of a negligence per se instruction. Rather, the City contests the applicability in this case of the MUTCD provision upon which the instruction is

based. Thus, the City's argument that it requested a "different version" of the instruction is without merit.

6. The question asked of Pline was phrased in the following manner: "[W]hat did the existence of two or one intersection ... have to do with the cause of this accident?"

ham, as a basis for his opinion that the design of the accident site was dangerous and did not meet existing standards. An expert may rely on hearsay to form an opinion provided that it is of a type reasonably relied upon by experts in the particular field in forming opinions on the subject. I.R.E. 703. A trial court has discretion in allowing an expert to render an opinion based on inadmissible evidence so long as the opinion is reached through independent judgment. *Doty v. Bishara,* 123 Idaho 329, 336, 848 P.2d 387, 394 (1992). Accordingly, we find no error in the trial court's dismissal of the City's hearsay objection.

■■■■■ The City also argues that the other accidents were not probative of any issue in this case because none involved a movement identical to that attempted by Garcia. With regard to trial court decisions as to the relevancy of evidence, this Court adheres to a *de novo* standard of review. *Lubcke v. Boise City/Ada County Hous. Auth.,* 124 Idaho 450, 466, 860 P.2d 653, 669 (1993). Idaho Rule of Evidence 402 provides that all relevant evidence is generally admissible. Evidence is relevant if it has any tendency to make the existence of a material fact more or less likely than it would be without the evidence. I.R.E. 401. Thus, our inquiry is simply whether the evidence of other accidents has any tendency to make a fact material to this dispute appear more or less likely to exist.

Cottingham testified that, in his opinion, the accident site did not meet existing design standards because there were too many points of potential unexpected conflicting movement in close proximity. By way of illustration, he stated that vehicles westbound on Oak Street attempting to turn left onto 13th Avenue would be in "conflict" with eastbound drivers having a green light in their favor. Essentially the same conflict is presented by a driver attempting to cross Oak from the north to reach 13th Avenue. A driver such as Lawton passing through the Oak–Jefferson intersection would not, according to Cottingham, have sufficient time to react to such conflicting movements. Cottingham testified that this design deficiency could be corrected by use of a raised median such as that proposed in the 1972 TOPICS report.

■■■■■ The accidents referred to by Cottingham all occurred in the same area where the collision between Lawton and Garcia took place. Furthermore, all were of a type that would have been prevented or affected by the proposed median. Therefore, the evidence of these other accidents has at least some tendency to make the fact that the street design did not comply with existing standards appear more likely to exist. Since there is no showing that the City was unfairly prejudiced by Cottingham's testimony, we hold that the testimony regarding the other accidents was properly admitted.[7]

## VIII.

## COMPELLED TESTIMONY

The City contends that the district court committed reversible error when it required counsel for the City, while conducting redirect examination of the City's expert, to inquire about other accidents unrelated to the accident in question. We find no error.

■■■■■ It is fundamental that an issue not raised at trial will not be considered by this Court when raised for the first time on appeal. *See, e.g., State v. Doe,* 123 Idaho 370, 371, 848 P.2d 428, 429 (1993). Not only is there no evidence that the district court forced counsel for the City to elicit testimony involuntarily, the City did not state an objec-

---

**7.** Three of the accidents referred to occurred after the accident giving rise to this appeal. However, the fact that they did not pre-date the accident in question is not material to the purpose for which they were utilized. The Lawtons claimed that the accident site did not meet existing design standards because drivers eastbound on Oak Street had insufficient time to react to certain points of potential conflicting movement after passing through the Oak–Jefferson intersec-

tion. There is no contention that the layout of the accident site was substantially different at the time of the occurrence of the subsequent accidents and it does not appear that the Lawtons were trying to establish notice on the part of the City. Thus, the fact that these accidents took place at the same site, even though later in time, has at least some tendency to make the Lawtons' allegations appear more likely to be true.

tion to the alleged compulsion at trial. Accordingly, the City cannot now complain about the testimony to which it refers.

## IX.

### REFUSAL TO INSTRUCT ON DRIVER'S DUTY TO YIELD

The district court did not specifically instruct the jury that Garcia was under a statutory duty to yield to oncoming traffic. The City contends that, because of this, it was somehow hindered in its ability to argue to the jury the extent to which each party was responsible for the accident. According to the City, it was impossible for the jury to quantify the percentage to which Garcia's breach of duty caused the accident when it was not specifically instructed as to what Garcia's duty was. We, on the other hand, have difficulty perceiving how the City could have been prejudiced by a failure to give redundant instructions.

 The jury was instructed, in Instruction No. 7, that there was no dispute that Garcia admitted negligence for failing to yield to traffic. There can be no negligence in the absence of a breach of duty. *See, e.g., Brizendine v. Nampa Meridian Irrigation Dist.,* 97 Idaho 580, 583, 548 P.2d 80, 83 (1976). Stating that a party was "negligent" is merely another way of saying that that party breached a duty owed. The duty breached in this instance was the failure to yield to traffic and the jury was effectively so instructed. Therefore, since the instructions given adequately presented the issues and set out the applicable law, no error was committed. *Leazer v. Kiefer,* 120 Idaho 902, 821 P.2d 957 (1991).

## X.

### DENIAL OF CITY'S MOTIONS FOR DIRECTED VERDICT AND JUDGMENT N.O.V.

The City finally contends that its motions for directed verdict and judgment notwithstanding the verdict should have been granted since there was no evidence from which the jury could find that it was negligent or that there was a causal link between the design of the accident site and the collision between Garcia and Lawton.

 The standard for granting motions for judgment notwithstanding the verdict is the same as that for motions for directed verdict set forth *supra;* the moving party asks the court to rule, as a matter of law, that there was insufficient evidence upon which a jury could find in the non-moving party's favor. In making such motions, the moving party admits the truth of all the non-moving party's evidence, as well as all legitimate inferences drawn therefrom. *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986). Our standard of review on appeal is the same. *Id.*

 When viewed in a light most favorable to the Lawtons, we cannot say that the evidence in this case is such that reasonable minds could not differ concerning the issues of the City's negligence and causation. Evidence was presented from which the jury could find that the City was aware that the accident site presented safety concerns and that it made plans to implement design changes to remedy the problem. There was also evidence that such design changes would have prevented the maneuver attempted by Garcia and thereby prevented the accident. Accordingly, we hold that, based on the evidence in the record, the district court did not err in denying the City's motions for directed verdict or judgment notwithstanding the verdict.

## XI.

### CONCLUSION

The verdict in favor of the Lawtons is set aside and the cause remanded for a new trial. No attorney fees on appeal. Costs are awarded as a matter of right to the City.

McDEVITT, C.J., JOHNSON and SILAK, JJ., and REINHARDT, J. Pro Tem., concur.