901 P.2d 501

**Todd TOMICH, individually, and Max Tomich, individually, Plaintiffs–Respondents–Cross Appellants,**

v.

**CITY OF POCATELLO, Defendant–Appellant–Cross Respondent.**

No. 21004.

Supreme Court of Idaho, Pocatello, May 1995 Term.

Aug. 23, 1995.

Ward, Maguire & Bybee, Pocatello, for appellant. David H. Maguire argued.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for respondents. Reed W. Larsen argued.

JOHNSON, Justice.

This case concerns the destruction of a small airplane in a wind storm at a municipal airport. We conclude the municipality is not entitled to immunity based on the recreation-

al use statute or the tort claims act. We also affirm the trial court's decisions regarding the admission of evidence and jury instructions characterizing the airplane owner as an invitee.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Todd Tomich (Tomich) and his father Max, both professional pilots, owned a 1967 Citabria 7ECA, a small fabric airplane. Upon moving to Pocatello (the city) in 1984, Tomich registered the plane with a fixed base operator (the FBO) at the Pocatello municipal airport (the airport). According to Tomich, at the FBO's instruction he tied down the plane at the airport on property owned by the city, rather than on property leased to the FBO. To park the plane he anchored it to tie-downs, chains embedded in the ground. Unlike some municipal airports, the city did not charge a tie-down fee.

Tomich parked the plane at the airport from 1984 to 1991, periodically flying it for recreational purposes. In March 1991 Tomich made some repairs on the plane, securing it to the tie-downs before leaving. The next day the tie-downs failed in a wind storm, causing the plane to tumble down the runway and be destroyed. Tomich and his father (the owners) sued the city, alleging that the city was negligent in failing to provide and maintain a safe area in which to tie down aircraft.

The city moved for summary judgment on the grounds that a local ordinance stating that everyone used the airport at their own risk provides the city immunity under I.C. § 6-904(1), the "discretionary function" exception (the discretionary function exception) of the tort claims act. The city filed a second motion for summary judgment, arguing that I.C. § 36-1604, the recreational use statute, shields it from liability as a landowner. The trial court denied both motions.

The city later sought a directed verdict, asking the trial court to dismiss the owners' claims of bailment and negligence, and to rule that Tomich was not an invitee. Although the trial court denied the city's entire

motion, it only instructed the jury on an invitee and negligence theory.

The jury found the city sixty percent at fault and awarded the owners $7,500 in damages. The city sought a judgment notwithstanding the verdict which the trial court denied. The trial court also refused to grant the owners' request for attorney fees pursuant to I.R.C.P. 37(c). The city appealed the judgment, and the owners cross-appealed the denial of attorney fees.

## II.

### THE RECREATIONAL USE STATUTE DOES NOT APPLY.

The city asserts that the recreational use statute shields it from liability because Tomich was a recreational user of the airport who did not pay a fee for its use. We disagree.

■ The recreational use statute limits the liability of public and private landowners to recreational users of the land when the land is made available for recreational purposes and no fee is charged. The statute contains a non-exclusive list of "recreational purposes" which includes activities such as hunting, swimming, camping, and snowmobiling, but not flying. I.C. § 36-1604(b)(3) (1994).

■ We reject the city's argument that it is entitled to immunity simply because Tomich flew his plane for recreational, rather than business, purposes. The application of the recreational use statute hinges on more than the mere fact that a land user is motivated by personal pleasure. According to the city's interpretation, aircraft owners and pilots who use the airport in identical manners have different rights under the statute based solely on whether they were flying for business or pleasure. Under this reasoning landowners could be liable for injuries to outfitters, and Tomich could have avoided the application of the statute by flying a few business trips over the years. The statute speaks in terms of activities, however, and nowhere suggests dividing land users engaged in identical activities into separate cat-

egories based simply on their subjective intent.

■ The proper question for us to ask is whether the flight activities pursued by Tomich at the airport fall within the scope of the recreational use statute. The relationship contemplated by the statute is that of landowner and land user where the landowner must refrain only from willful and wanton conduct. *See Jacobsen v. City of Rathdrum,* 115 Idaho 266, 270, 766 P.2d 736, 740 (1988) (holding recreational users entitled to same protection as trespassers). There is no immunization from liability, however, when the recreational user enjoys a "special relationship" with the landowner, such as when the owner is under a statutory duty to provide for the safety of people coming onto the property. *Bauer v. Minidoka Sch. Dist. No. 331,* 116 Idaho 586, 778 P.2d 336 (1989) (holding recreational use statute did not apply where student was injured on playground prior to start of classes because of special relationship between schools and students).

■ Tomich's activities at the airport do not fall within the scope of the recreational use statute. Private pilots and aircraft owners—both recreational and business users—have a "special relationship" with the city. As one indication of this special relationship, both the airport and Tomich's use of it are extensively regulated. While the city is not under a specific statutorily imposed duty to provide for the safety of people using the airport, the airport is governed by extensive state statutes and regulations whose purpose is to provide for "the protection and promotion of safety in aeronautics." I.C. § 21–102(a) (1995). Further, Tomich was subject to detailed local ordinances and regulations governing his use of the airport. For example, a local ordinance required the use of tie-downs.

■ Additionally, the city implicitly recognizes the special character of its relationship with aircraft owners and pilots in its differing treatment of the general public. The airplanes stored at the airport are parked in a secure fenced area and "no trespassing" signs are posted around the perimeter to keep out the general public. In contrast to the general public, Tomich was not merely permitted to trespass on the city's land, but encouraged to patronize the airport. The state airport directory informs pilots that tie-down facilities are available at the Pocatello airport. The city also contracts with FBOs to provide services for pilots and aircraft owners.

## III.

## THE CITY IS NOT IMMUNE UNDER THE DISCRETIONARY FUNCTION EXCEPTION.

The city asserts that the discretionary function exception shields it from liability because it passed an ordinance embodying a policy decision not to maintain the airport's tie-downs because of budget constraints. We disagree.

■ A governmental entity is not liable for any claim which is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." I.C. § 6–904(1) (1990). To determine if a governmental action qualifies as a discretionary function, the Court uses the "planning/operational" test first adopted in *Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986). Under this standard, "[r]outine matters not requiring evaluation of broad policy factors will likely be 'operational,' whereas decisions involving a consideration of the financial, political, economic, and social effects of a particular plan are likely 'discretionary' and will be accorded immunity." *Lawton v. City of Pocatello and Garcia,* 126 Idaho 454, 460, 886 P.2d 330, 336 (1994).

■ In January 1991, the Pocatello city council adopted an ordinance pursuant to I.C. § 50–321 which authorizes cities to promulgate regulations necessary for the operation and maintenance of aviation facilities. The ordinance contains a general disclaimer of liability which states that "[p]ersons visiting or using the airport and its facilities shall do so at their own risk ... and shall save and hold harmless and defend the city from liability for any loss...." A more specific provi-

sion governing the securing of aircraft states that "[o]wners shall assume the risk of damage to their own aircraft...." These provisions are not dispositive because whether or not the ordinance embodies a discretionary planning decision, the city cannot avoid the tort claims act simply by enacting general disclaimers of liability. Municipalities can decide whether or not to undertake particular responsibilities. They cannot define through ordinances the legal consequences of these decisions. To hold otherwise would render the discretionary function exception meaningless.

The question remains whether the city made a discretionary planning decision not to maintain the tie-downs at the airport. In *Lewis v. Estate of Smith,* 111 Idaho 755, 757–58, 727 P.2d 1183, 1185–87 (1986), the Court held that liability could not be imposed upon a city which decided not to provide regular fire inspections due to lack of funds. Similarly, in *Jones v. City of St. Maries,* 111 Idaho 733, 736–37, 727 P.2d 1161, 1164–65 (1986), the Court remanded for a determination of whether the city had assumed responsibility for the inspection of water mains and fire hydrants or whether it had made a policy decision to forgo such inspections because of budgetary concerns.

■ The record does not support the proposition that the city made a planning decision not to maintain the tie-downs. The only evidence for such a decision is the ordinance decreeing that the public uses the airport at its own risk. The airport manager testified outside the jury's presence that the city passed the ordinance in response to budgetary constraints and to limit liability claims by private plane owners who used the tie-downs unsupervised. The ordinance reflects a desire to limit the city's liability, however, not a decision to reduce or eliminate maintenance at the airport. In *Lewis* the city explicitly decided to cut back on inspections because of a lack of money to carry out the inspections, not because it was afraid to undertake them for liability reasons. 111 Idaho at 757, 727 P.2d at 1185. Here, rather than reach a policy decision on airport maintenance, the city tried to make a policy decision that it would not be liable for anything that

happened at the airport. Therefore, the discretionary function exception does not immunize the city.

## IV.

### THE TRIAL COURT PROPERLY ADMITTED INTO EVIDENCE A LEASE BETWEEN THE CITY AND THE FBO AND A STATE DOCUMENT ON TIE–DOWN STANDARDS.

The city asserts that the trial court improperly admitted into evidence a lease between the city and the FBO and a document containing state standards concerning tie-downs. We disagree.

The trial court admitted into evidence, over the city's relevancy objection, a lease between the city and the FBO in which the city agreed to "maintain, operate, and keep in good repair the airport and its appurtenances, facilities and services...." The city contends that the lease was irrelevant because the owners could not enforce it as third party beneficiaries.

■ The existence of a contractual duty to maintain the airport cannot be equated with a tort duty to a third party. Yet, in determining whether the city had a duty to the owners, the broader issue of what responsibilities the city assumed with regard to the airport was implicated. Throughout the trial, the city essentially denied responsibility for everything that happened at the airport. Given that stance, the lease was relevant, albeit tenuously, and properly admitted by the trial court.

The trial court also admitted into evidence a document published by the Idaho transportation department's bureau of aeronautics and public transportation, which detailed "state standards" (the state standards) for the construction and installation of tie-downs. The city objected on foundational grounds, arguing that there was no evidence the document represented mandatory state regulations.

■ The trial court informed the jury that the state standards on tie-downs were advisory, not mandatory, and it did not give a negligence *per se* instruction regarding the

regulations. The city did not dispute that the document represented standards compiled by the state. Thus, there was a sufficient foundation for admitting the tie-down standards for advisory purposes.

## V.

## THE TRIAL COURT CORRECTLY RE-JECTED THE CITY'S MOTION FOR A DIRECTED VERDICT AND IN-STRUCTED THE JURY THAT TO-MICH WAS AN INVITEE.

The city asserts that the trial court should have granted its request for a directed verdict, dismissing the owners' claims of bailment and negligence, and ruling as a matter of law that Tomich was not an invitee. We disagree.

First, although the trial court rejected the city's motion for a directed verdict regarding bailment, it later held that the owners had not presented sufficient evidence to support a bailment claim and refused to instruct the jury on that theory. Therefore, this issue is moot.

The city also contends on appeal that the owners should have been limited to a bailment theory on which the trial court should have granted a nonsuit. In other words, the city argues that the principles of landowner liability do not apply.

■ The city did not preserve the issue for appeal, however, because it never moved for a nonsuit on the issue of landowner liability. In fact, the city repeatedly argued that the principles of landowner liability applied and submitted jury instructions to that effect. If the city had argued below that the only tenable theory for recovery was bailment, the owners might have cross-appealed the trial court's decision not to send that claim to the jury.

The city also sought a directed verdict stating that Tomich was not an invitee. The trial court denied the request and instead instructed the jury according to the following definition of an invitee: "a person [who] enters upon the premises of another for a purpose connected with the business there conducted, or [whose] visit may reasonably be said to confer or anticipate a business, commercial, monetary or other tangible benefit to the occupant." The city focuses on the word "business," and contends that Tomich was not an invitee because he used his plane for recreational purposes. The city would presumably characterize Tomich as a licensee, "a visitor who goes upon the premises of another with the consent of the landowner in pursuit of the visitor's purpose," although it did not request a jury instruction to this effect. *Holzheimer v. Johannesen,* 125 Idaho 397, 400, 871 P.2d 814, 817 (1994).

■ The trial court correctly instructed the jury that Tomich was an invitee. Tomich used the airport to fly his plane, which is the "business there conducted" at an airport, and therefore Tomich was an invitee. The fact that an individual has a personal or recreational reason for entering the premises of another is irrelevant to whether that individual meets the definition of an invitee. The relevant inquiry is whether the individual enters the premises for a purpose connected with the business conducted on those premises. Tomich used the airport in exactly the manner for which it was intended, designed, and commonly used, thereby benefiting the city. Therefore, Tomich was an invitee.

■ Because Tomich was an invitee, the trial court correctly rejected a directed verdict on the claim of negligence. As an invitee, the city owed Tomich a duty to keep the airport premises in a reasonably safe condition. *Id.* at 400, 871 P.2d at 817.

## VI.

## THE OWNERS ARE NOT ENTITLED TO ATTORNEY FEES PURSUANT TO I.R.C.P. 37(C) BECAUSE THEY COULD HAVE DEEMED THE RE-QUESTS ADMITTED.

■ The owners assert they are entitled to attorney fees pursuant to I.R.C.P. 37(c) because the city unjustifiably denied their requests for admissions which were subsequently proven at trial. We disagree.

On July 15, 1993, the owners served the city with eight requests for admission regarding the airplane's base blue book value and the procedures and standards for assess-

ing a plane's value. On September 27, 1993, the day before trial, the city responded by denying the requests. At trial, expert witnesses for the owners testified regarding the requested admissions, some of which became the subject of dispute between the parties' experts. Nonetheless, the owners proved the majority of their requests for admissions. As a result, the owners sought $2,764.50 in attorney fees pursuant to I.R.C.P. 37(c) which permits recovery of "reasonable expenses" incurred because of an unjustified failure to admit matters subsequently proven at trial.

The intended purpose of I.R.C.P. 37(c) is to compensate parties for the expense of unnecessarily proving requested admissions. When the city did not respond to the request for admissions within fifteen days as required by I.R.C.P 36, the owners could have treated the requests as admitted. Nevertheless, the owners decided not to rely on the admissions, and did not submit them to the trial court as required by I.R.C.P. 36(d). Because the owners could have treated the requests as admitted facts under I.R.C.P. 36(d), it was not necessary to prove the matters at trial and the trial court appropriately denied their request for attorney fees.

### VII.

### THE OWNERS ARE NOT ENTITLED TO ATTORNEY FEES ON APPEAL UNDER I.C. § 6–918A, WHICH PROVIDES THE EXCLUSIVE STANDARD FOR ATTORNEY FEE AWARDS IN CASES BROUGHT UNDER THE TORT CLAIMS ACT.

The owners assert that they are entitled to attorney fees on appeal pursuant to I.C. § 12–121, which authorizes a discretionary award of attorney fees "in any civil case." We disagree.

 Two years after the enactment of I.C. § 12–121, the legislature added a provision to the tort claims act authorizing the award of attorney fees against the government in tort cases only where there has been "bad faith." I.C. § 6–918A (1990). To the extent of any conflict between I.C. § 12–121 and I.C. § 6–918A, we apply I.C. § 6–918A. It is not only the later statute, but also a more specific statement of the legislature's

intent about the award of attorney fees in tort claims cases. *See Mickelsen v. City of Rexburg,* 101 Idaho 305, 307, 612 P.2d 542, 544 (1980) (holding that to the extent of conflicts, later or more specific statutes control over earlier or general statutes).

The owners recovered against the city on a negligence theory, so an award of attorney fees on appeal is proper only if the city acted in bad faith. There is no evidence the city appealed in bad faith, and the owners are therefore not entitled to attorney fees on appeal under I.C. § 6–918A.

### VIII.

### CONCLUSION.

We affirm the judgment and the trial court's denial of the owners' attorney fees.

We award the owners, the respondents, costs, but not attorney fees, on appeal.

McDEVITT, C.J., and TROUT and SILAK, JJ., concur.

SCHROEDER, Justice, concurring in part, dissenting in part.

I concur with the determinations of the court except the conclusion in Part III that the city is not immune under the discretionary function exception embodied in I.C. § 6–904(1).

The Court correctly notes that "decisions involving a consideration of the financial, political, economic, and social effects of a particular plan are likely 'discretionary' and will be accorded immunity." *Lawton v. City of Pocatello and Garcia,* 126 Idaho 454, 460, 886 P.2d 330, 336 (1994). This statement is consistent with *Lewis v. Estate of Smith,* 111 Idaho 755, 727 P.2d 1183 (1986), in which the Court held that liability could not be imposed upon a city which decided not to provide regular fire inspections due to lack of funds. In *Jones v. City of St. Maries,* 111 Idaho 733, 736–37, 727 P.2d 1161 (1986), the Court made the following statement with regard to whether the city had assumed responsibility for the inspection of water mains and fire hydrants or whether it had made a policy decision to forego such inspections because of budgetary concerns:

If, for example, the evidence on remand indicates that the city, due to budgetary

constraints or other factors, made a policy decision not to inspect its water mains and fire hydrants, such a decision would be discretionary, as it would involve planning rather than operational activity, and the city would be immune from liability even if the decision was negligently made. If, on the other hand, the evidence indicates that the city had, in fact, assumed the responsibility for inspecting and maintaining the fire hydrants and water mains at issue, then it would be obligated to perform those activities with due care and would be correspondingly liable for any failure to do so.

In the case at hand Pocatello adopted an ordinance which contained a general disclaimer of liability stating that persons using the airport and its facilities did so at their own risk. The Court concludes that this ordinance does not establish that the city made a planning decision not to maintain the tie-downs. However, the ordinance is not the only evidence of the planning decision. The Court acknowledges that, "the airport manager testified outside the jury's presence that the city passed the ordinance in response to budgetary constraints and to limit liability claims by private plane owners who used the tie-downs unsupervised." The fact that the testimony was outside the presence of the jury is irrelevant since the district court determined as a matter of law that the city was not immune. In addition to the airport manager's post-trial live testimony, the city submitted an affidavit by the manager in support of its pretrial motion for summary judgment on the governmental immunity issue. The airport manager stated in the affidavit that, "the policy decision to limit liability exposure was based upon budgetary constraints incurred by the City of Pocatello in maintaining operations at the Pocatello Regional Airport." That statement of fact was not disputed in this record. In its memorandum decision and order denying the city's motion for summary judgment the trial court noted that, "at the time of the tie-down failure, the City stated that it had no plans in place for the maintenance of the tie-downs, citing budget constraints." However, the trial court concluded that:

> It cannot be said that the maintenance of aircraft tie-downs has anything to do with

policy formation. It is either the implementation of City policy, or at the very least, something separate and distinct from policy formation. Thus, on the basis of the ordinance provisions, and because the City's actions did not involve the formation of policy, the City receives no tort immunity from Idaho Code § 6–904.

The record indicates that the city was not maintaining tie-downs because of budget constraints. Therefore, the case falls within the reasoning of *Lawton, Lewis, and Jones.* The determination that the city is not immune under the discretionary function exception is in error.